Luella J. GATFIELD, petitioner,
Appellant,

v.

Edward C. GATFIELD,
Jr., Respondent.

No. A03–1618.

Court of Appeals of Minnesota.

July 6, 2004.

Stephen J. Beseres, New Hope, MN, for appellant.

Daniel L. Giles, Marshall, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; SCHUMACHER, Judge; and HUSPENI, Judge.*

## OPINION

ROBERT H. SCHUMACHER, Judge.

Appellant-wife Luella J. Gatfield challenges the district court's denial of her motion to either enforce the stipulated provisions of the judgment dissolving her marriage to respondent-husband Edward C. Gatfield, Jr. that addresses husband's military retirement benefits or to have husband pay her permanent maintenance. Wife argues that *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), does not deprive the district courts of the ability to enforce the stipulated provision of a dissolution judgment in which a veteran agrees not to waive military retirement pay in favor of disability pay and to pay 50% of the gross military pay if retirement pay is waived in favor of disability pay.

Wife also argues the district court erred in denying her motion for spousal maintenance by not taking into account the change in circumstances of the parties caused by husband's unilateral act of breaching the parties' agreement. We reverse and remand.

## FACTS

Husband and wife were married in 1972. In that same year, husband joined the United States Navy. In December 1995, a Virginia circuit court dissolved their marriage. The decree specifically incorporates the parties' stipulation. The stipulated provision of the judgment regarding husband's military retirement benefits provides

as an obligation ... commencing November 1, 1993, and continuing on 1st day of each month thereafter (as to the monthly annuity) there shall be paid directly to wife, by government allotment, as a direct obligation of the government plan administrator by direct assignment to wife from the plan administrator, fifty percent (50%) of the total (as the same may vary hereafter) monthly disposable U.S. military retired pay, retirement benefits of husband to which husband is entitled under the laws administered by the Secretary of the service from which he retired.

"Disposable" retired pay means disposable retired pay of a member subject to division under the Uniformed Services Former Spouse's Protection Act (10 U.S.C. 1408).

For any months that wife does not receive a payment from the plan administrator and husband does, it shall be the duty of husband to make the payment promptly and directly to wife.

Husband covenants, represents, warrants and agrees that he will not waive any portion of any longevity retired, retirement or retainer pay in order to elect disability or other pension or lump sum or severance pay or other compensation in lieu thereof and agrees to renounce the right to make such waiver and election and to elect an alternative form of retirement. In the event husband does in violation hereof, he shall

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

upon receipt pay to wife fifty percent (50%) thereof.

At some point, husband opted to receive military disability pay and waived an equivalent portion of his military retirement pay. In an affidavit submitted to the district court, husband states he has been receiving partial disability since November 1, 1993, and wife was aware he had waived part of his retirement pay in lieu of military disability pay before the parties entered into the stipulation. Wife denies any knowledge of when husband first opted to receive military disability pay.

Since the time husband initially waived his military retirement pay in favor of military disability pay, he has periodically undergone physical examination by the Veterans Administration to determine his level of service-related disability and thus the amount of military disability pay he is entitled to receive. At the time husband submitted his affidavit, the Veterans Administration had determined husband was 60% disabled by service related injuries and was entitled to $893 per month in disability pay.

In wife's affidavit, she states that her initial monthly share of husband's military retirement pay was $445. But the amount she receives has consistently decreased and she is currently receiving approximately $60 per month.

In 2001, wife moved the district court to order husband to abide by the terms of the stipulation, to compensate her for the reduced amount she had received as her share of husband's retirement pay since late 1993, and to award her permanent spousal maintenance. The district court denied wife's motions, concluding:

> The Veteran's Administration Disability Benefits cannot be subject to a property claim by a spouse, and the ability of State Courts to award such benefits to a spouse has been preempted by Congressional Statute, and that preemption has been upheld by the United States Supreme Court in the case of *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

> The request for maintenance must also be denied at this time. There is not sufficient current information to indicate a need. The medical information is not current, and in fact is almost four years out of date. The Court is not satisfied that there has been a sufficient showing of attempts to seek work, or current proof of physical inability to perform work on the part of [wife]. Moreover, [husband] is currently on unemployment being laid off at Arteyson Technologies, and is not in a current position to pay maintenance unless the disability benefits were used.

## ISSUE

Did the district court err in determining that it could not address the merits of wife's request to enforce the stipulated provisions of the dissolution judgment addressing husband's military retirement benefits?

## ANALYSIS

Wife argues the district court erred in determining that the application of *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), to the facts of the present case prevented it from considering her motion to require husband to pay her one-half of his military disability pay based on the stipulated provision of the judgment dissolving the parties' marriage. Whether federal law preempts a state court from addressing the general class or category to which the proceedings in question belong is a jurisdictional question. *State v. R.M.H.,* 617 N.W.2d 55, 60 (Minn.2000); *see also In re Trusteeship*

*created by City of Sheridan,* 593 N.W.2d 702, 705 (Minn.App.1999) (stating subject-matter jurisdiction is "court's power to hear and determine cases of the general class or category to which proceedings in question belong"). This court reviews questions of jurisdiction de novo. *McLain v. McLain,* 569 N.W.2d 219, 222 (Minn. App.1997), *review denied* (Minn. Nov. 18, 1997).

■ We note wife argues that if this court concludes Minnesota law prevents enforcement of the stipulated provisions of the dissolution judgment, we should also consider the law of Virginia in place at the time the parties agreed to the stipulation. The stipulated provisions of the dissolution judgment explicitly provide that any dispute concerning the stipulated provision of the judgment shall be resolved in accordance with Virginia law. But the sole question before us is whether the district court had jurisdiction. To the extent wife is arguing Virginia law should apply to our resolution of the jurisdictional question, we disagree. Whether a Minnesota court has jurisdiction to hear a case is determined by Minnesota law and by binding federal precedent. *See, e.g., Stanek v. A.P.I., Inc.,* 474 N.W.2d 829, 832 (Minn.App.1991) (stating personal jurisdiction depends on Minnesota's long-arm statute and federal due process concerns), *review denied* (Minn. Oct. 31, 1991). On remand, however, the district court will need to apply Virginia law to resolve any conflicts regarding the stipulated provisions.

■ The United States Supreme Court in *Mansell* was asked to determine whether under the Uniformed Services Former Spouses Protection Act, state courts "may treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits." 490 U.S. at 583, 109 S.Ct. at 2025. The Supreme Court held "that the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594–95, 109 S.Ct. at 2032.

Husband argues that the Supreme Court's holding in *Mansell* deprives state courts of jurisdiction to enforce the terms of a stipulation regarding military disability benefits and points to the existence of a stipulation in *Mansell.* Although the Supreme Court in *Mansell* did note the existence of a stipulation between the parties, we agree with other states that have addressed this issue that the Supreme Court's holding is narrow. *See, e.g., In re Marriage of Mansell,* 217 Cal.App.3d 219, 265 Cal.Rptr. 227, 232 (1989) (stating "Supreme Court's holding was quite narrow: FUSFSPA does not alter, with regard to non-disposable retired or retainer pay (including the pay at issue herein), the already-existing federal statutory structure which, according to [*McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)] preempts state community property law"), *review denied* (Cal. Mar. 29, 1990).

■ Neither the Supreme Court's holding in *Mansell* nor the Uniformed Services Former Spouses Protection Act precludes a veteran from voluntarily entering into a contract whereby he or she agrees not to waive retirement pay in favor of disability benefits and to indemnify a former spouse for any loss the spouse might incur should the veteran choose to waive any portion of retirement pay. *See, e.g., Krapf v. Krapf,* 439 Mass. 97, 786 N.E.2d 318, 326 (2003) ("Nothing in 10 U.S.C. § 1408 or in the *Mansell* case precludes a veteran from voluntarily entering into a contract whereby he agrees to pay a former spouse a sum of money that may come from the VA disability benefits he receives."); *Shelton*

*v. Shelton,* 78 P.3d 507, 511 (Nev.2003) (holding states are not precluded from applying contract law, even when military disability benefits are involved); *Hisgen v. Hisgen,* 554 N.W.2d 494, 498 (S.D.1996) (holding trial court could order husband to pay wife part of disability pay based on parties' divorce settlement agreement).

■ When parties agree to dissolve their marriage under certain terms, that stipulation is "accorded the sanctity of [a] binding contract." *Shirk v. Shirk,* 561 N.W.2d 519, 521 (Minn.1997). It is well settled that in a stipulation, parties are free to bind themselves to obligations that a court could not impose. *LaBelle v. LaBelle,* 302 Minn. 98, 111, 223 N.W.2d 400, 408 (1974); *see also Geiger v. Geiger,* 470 N.W.2d 704, 707 (Minn.App.1991) (stating "stipulations may waive parties' statutory rights in dissolution cases"), *review denied* (Minn. Aug. 1, 1991). The Supreme Court's holding in *Mansell* is not contrary to this well-settled principle.

■ We note that in Minnesota, once a district court incorporates a stipulation agreement into a dissolution judgment, the agreement merges with the judgment and "cannot thereafter be the target of attack by a party seeking relief from the judgment." *Shirk,* 561 N.W.2d at 522. When seeking to enforce a dissolution judgment entered by a Minnesota court, the moving party actually seeks to enforce the stipulated provision of the judgment and not the terms of the stipulation itself. But we do not read *Shirk* to hold that the merger of the stipulation into the judgment changes the voluntary nature of the stipulated provisions or prevent the district court from adopting the stipulated provisions that bind the parties to perform obligations that the court could not impose. Indeed, here there is no *attack* on a stipulated provision; wife is seeking *to enforce* the provision.

■ Therefore, whether a party seeks to enforce the terms of the stipulation agreement, as may be the case when the parties' marriage was dissolved in another state, or whether the party seeks to enforce the stipulated provision of a Minnesota dissolution judgment, federal law does not preempt state district courts from enforcing the stipulated terms/provisions. To rule that *Mansell* precludes enforcement of the stipulated provisions of a Minnesota judgment because the provisions are part of a judgment but no longer have a separate existence as part of a now-merged-into-judgment stipulation, would be to create separate scopes of enforceability—one for non-Minnesota judgments and a narrower scope of enforceability for stipulated Minnesota judgments.

We conclude the Supreme Court's decision in *Mansell* does not prevent state courts from enforcing the stipulated provisions of a dissolution judgment that husband will not waive his retirement pay in favor of military disability pay, and if he does, he will pay wife 50% of the total military pay he receives. Because the district court did not reach the merits of wife's claim, we remand to the court to determine the terms of the parties' stipulation and to what extent husband might have breached those terms.

We note husband argues the Kansas appellate court had the correct understanding of *Mansell* in *In re Marriage of Pierce,* 26 Kan.App.2d 236, 982 P.2d 995 (1999). But the Kansas appellate court specifically noted: "[Husband] has not violated the terms of the property settlement agreement. There is absolutely nothing in that agreement that forbids [husband] from waiving all of his retirement pay in order to receive his disability benefits." *Id.* If we accepted husband's argument that *Pierce* is the correct understanding of

*Mansell,* it does not call for a different result in this case. Here, wife alleges that husband had violated the terms of their stipulation preventing him from waiving retirement pay in order to receive disability pay.

■ Wife also argues the district court erred in denying her motion for spousal maintenance because there was a change in her financial circumstances. We are unable to determine how the district court concluded that wife does not have a need for maintenance if husband is not required to abide by the terms of the stipulation. It is also unclear whether the district court determined that husband's disability pay could not be used to calculate his income. *See* Minn.Stat. § 518.54, subd 6 (2002) (defining income to include "military and naval retirement, pension and disability payments").

■ Because there is ambiguity as to how the district court reached its decision on spousal maintenance, we also remand this issue. *See Stich v. Stich,* 435 N.W.2d 52, 53 (Minn.1989) (remanding where district court failed to make adequate maintenance-related findings). The essential consideration in the award of maintenance is the financial need of the party receiving maintenance and his or her ability to meet that need balanced against the financial condition of the spouse who will be providing the maintenance. *Novick v. Novick,* 366 N.W.2d 330, 334 (Minn.App.1985). Under section 518.552, the district court may award maintenance if

it finds that the spouse seeking maintenance:

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (2002).

■ If the district court determines that a maintenance award is proper, it will then need to determine the amount and duration of maintenance based on the relevant factors enumerated in section 518.552, subdivision 2, including

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2 (2002). "No single statutory factor or consideration for determining the amount and duration of spousal maintenance is dispositive." *Elwell v. Elwell*, 372 N.W.2d 67, 69 (Minn. App.1985).

We note that the original dissolution judgment in this case reserved the issue of spousal maintenance. Thus, the issue is not whether circumstances have changed to such a degree that the dissolution judgment could be modified under Minn.Stat. § 518.64 (2002), but whether, under the factors enumerated in Minn.Stat. § 518.552 (2002), wife is entitle to maintenance. *Zamora v. Zamora*, 435 N.W.2d 609, 611 n. 1 (Minn.App.1989).

### DECISION

The United States Supreme Court's decision in *Mansell* does not prevent the district court from considering whether husband violated provisions of the parties' stipulation.

**Reversed and remanded.**