Argued and submitted November 26, 2008, supplemental judgment reversed and remanded with instructions to delete provision concerning survivor annuity; supplemental judgment for attorney fees vacated and remanded for reconsideration; otherwise affirmed May 27, 2009

## In the Matter of the Marriage of

### Greggory L. HAYES,
*Petitioner-Appellant,*

*and*

### Glenda M. HAYES,
nka Glenda M. Blair,
*Respondent-Respondent.*

### Marion County Circuit Court
01C33848; A134465

208 P3d 1046

Mark Johnson argued the cause for appellant. With him on the briefs were Alexandra West and Johnson & Lechman-Su PC.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander, McCann & Prestwich, PC.

Before Haselton, Presiding Judge, and Edmonds, Judge, and Rosenblum, Judge.

EDMONDS, J.

**EDMONDS, J.**

In this dissolution of marriage proceeding under ORS 107.105, husband appeals from the entry of a domestic relations order (DRO) that awards wife a property interest in his military pension and requires husband to designate wife as the beneficiary of his military survivor benefit plan. He contends that federal law precludes the division of his military pension, and that the requirement that he designate wife as the beneficiary of his survivor benefits amounts to an impermissible post-judgment modification of the marital property distribution. We reject husband's first argument but agree that the trial court was not authorized to award survivor benefits to wife. Accordingly, we affirm in part, reverse in part, and remand to the trial court for reconsideration of wife's entitlement to attorney fees.

We find the following facts on *de novo* review. ORS 19.415(3); *O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005). Husband and wife married in 1980, and husband began active military service three years later. At the time of the dissolution in 1998, husband had served 15 years in the United States Army. Although husband was not yet entitled to a military pension (and would not be for another five years), the prospective pension was the most valuable asset in the marriage. The remainder of the marital property consisted of a few household goods and personal items to which neither party attached any significant value. For that reason, the centerpiece of the parties' property division was the retirement benefits that husband might one day receive for his military service during the marriage.

Ultimately, the parties agreed to a property settlement that was memorialized in a stipulated judgment of dissolution, which was entered in 1998. Section 6 of that judgment dealt with the military retirement benefit plan:

"6. [Wife] shall receive a percentage interest of [husband's] Military Retirement Benefit Plan (Plan) at any time and for any reason a benefit is paid out by the Plan in accordance with its terms.

"6.1 [Husband] shall retain an attorney to prepare a domestic relations order to divide the Plan's benefits

between the parties in accordance with the provisions of Internal Revenue Code [§] 414(p). Each party shall be responsible for the payment of one-half of the attorney's fee for the preparation of this domestic relations order.

"6.2 The amount or percentage of [husband's] benefits to be paid by the Plan to [wife] is to be determined as follows:

"6.2.1 The Plan administrator shall determine [husband's] interest in the Plan on the date his interest in the Plan moves to pay status.

"6.2.2 The Plan administrator shall multiply the benefit determined in paragraph 6.2.1 by the coverture fraction. The numerator of the coverture fraction is equal to the total period of benefit accrual up to the effective date of the judgment of dissolution. The denominator is the total period of accrual up to the point where petitioner begins receiving benefits for any reason.

"6.2.3 The benefit determined in 6.2.2 shall be multiplied by fifty percent (50%).

"6.3 The Court retains jurisdiction of the division of the retirement benefits described herein so it can make any modifications to this judgment which may be necessary to accomplish the goals stated herein relating to the division of said benefits."

Despite paragraph 6.1, husband never retained an attorney to prepare the DRO concerning retirement benefits. Some years later, wife discovered that the DRO had never been entered, and she retained an attorney to prepare the order. Husband, however, did not agree with the DRO prepared by wife's attorney, so he too retained counsel to prepare a competing order. In early 2006, the parties filed cross-motions in which they asked the court to enter their respective orders. The court held a hearing on those motions in June 2006, and husband and wife each testified.

By the time of the hearing, husband had served more than 23 years in the Army and was eligible to receive retirement pay. At the hearing, he testified that he had no immediate plans to retire. He was not, at that time, physically restricted in his duties, but it was possible that he would receive disability benefits after retirement, depending on his

physical condition. The issue of disability was significant because, as discussed below, a disability claim would effectively reduce husband's retirement benefits.

Following the hearing, the court granted wife's motion, denied husband's motion, and entered the DRO that is the subject of this appeal.[1] That order awards wife 50 percent of the marital portion of husband's "disposable military retired pay" and includes various provisions designed to prevent husband from reducing the amount of his "disposable military retired pay" through waivers, including but not limited to waivers related to his receipt of disability benefits. At the same time, another section of the DRO defines the term "military retirement" as follows:

> "For the purposes of interpreting this Court's intention in making the division set out in this Order, 'military retirement' includes retired pay paid or to which [husband] would be entitled for longevity of active duty and/or reserve component military service and all payments paid or payable under the provisions of Title 38 or Chapter 61 of Title 10 of the United States Code, before any statutory, regulatory, or elective deductions are applied."[2]

In addition, and over husband's objection, the DRO provides that wife "shall be treated as [husband's] irrevocable beneficiary under the Survivor Benefit Plan[,]" a designation that would entitle wife to an annuity in the event that husband were to predecease her. *See generally* 10 USC § 1448. The court later awarded wife attorney fees by way of a supplemental judgment, which husband also appeals.

■    In his first assignment of error, husband contends that the DRO awards wife an interest in his military retired pay that is not divisible under federal law. Specifically, husband contends that, under federal statute and United States Supreme Court case law, the divisible portion of a service member's military retired pay is limited to "disposable retired pay"—that is, the service member's retired pay *after*

---

[1] The DRO was entered as a supplemental judgment.

[2] We note that the defined term "military retirement" does not actually appear in section 6 of the DRO, the section that describes the amount of wife's marital portion of husband's military retired pay. The parties, however, do not mention that discrepancy and appear to agree regarding the effect of the language in the DRO.

certain deductions are taken. *See* 10 USC § 1408(a)(4) (defining "disposable retired pay" in those terms). Here, husband contends, the division of benefits in the DRO conflicts with federal law because it is based on the amount of his benefits *before* any such deductions.

Before addressing husband's arguments, we pause to describe the nature of the benefits at issue. Since the 1860s, federal law has provided nondisability retirement benefits to military officers. *See generally McCarty v. McCarty*, 453 US 210, 212-13, 101 S Ct 2728, 69 L Ed 2d 589 (1981) (discussing historical evolution of military retirement legislation). "The impetus for this legislation was the need to encourage or force the retirement of officers who were not fit for wartime duty." *Id.* at 212. Under current law, an Army officer who has 20 years of service, at least 10 of which are active duty as a commissioned officer, may request that the Secretary of the Army retire him or her. 10 USC § 3911. An officer who elects retirement is entitled to "retired pay" based on the officer's rank and years of service. 10 USC §§ 3929, 3991.

At the same time, a veteran who becomes disabled as a result of military service is eligible for disability benefits, which are calculated based on the seriousness of the disability and the veteran's ability to earn a living. 38 USC §§ 114, 1155. However, to prevent "double-dipping" from federal benefits, a retiree may receive disability benefits only to the extent that the retiree waives a corresponding amount of military retirement benefits. 38 USC § 5305. Because disability benefits—unlike retirement benefits—are tax-exempt, military retirees who are also disabled commonly waive their retired pay in favor of disability benefits to increase their after-tax income.

The treatment of retired pay and disability benefits for dissolution purposes is a subject that has long vexed courts. In *McCarty*, the Supreme Court considered the question "whether, upon dissolution of a marriage, federal law precludes a state court from dividing military nondisability retired pay pursuant to state community property laws." 453 US at 211. In that case, the California Court of Appeal had

affirmed a trial court award that divided the husband's military retirement benefits under California's community property laws. *Id.* at 218. In doing so, the Court of Appeal had rejected the husband's contention that the federal scheme of military retirement benefits preempted state community property laws. *Id.* After the California Supreme Court denied the husband's petition for hearing, the United States Supreme Court accepted review. *Id.* at 219.

Ultimately, the Supreme Court held that "there is a conflict between the terms of the federal retirement statutes and the community property right asserted by [the wife]." *Id.* at 232. Because the division of military retired pay as part of a dissolution undermined the goals of a youthful military and the orderly promotion of officers—and thus presented a grave harm to "clear and substantial" federal interests—the court concluded that California's community property laws were preempted by federal law. *Id.* at 232-36.

In direct response to *McCarty*, Congress enacted the Uniformed Services Former Spouses' Protection Act (FSPA), 10 USC § 1408, which authorizes state courts to treat "disposable retired pay" as divisible property for purposes of state dissolution laws. The FSPA defines "disposable retired pay" in the following terms:

"(4)  The term 'disposable retired pay' means the total monthly retired pay to which a member is entitled less amounts which—

"(A)  are owed by that member to the United States for previous overpayments of retired pay and for recoupments required by law resulting from entitlement to retired pay;

"(B)  are deducted from the retired pay of such member as a result of forfeitures of retired pay ordered by a court-marital *or as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38* [governing disability benefits];

"(C)  in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the

member's name was placed on the temporary disability retired list); or

"(D)   are deducted because of an election under chapter 73 of this title to provide an annuity to a spouse or former spouse to whom payment of a portion of such member's retired pay is being made pursuant to a court order under this section."

10 USC § 1408(a) (emphasis added). Thus, under the FSPA, the divisible portion of military retired pay—*i.e.*, "disposable retired pay"—does not include the amount of retired pay that has been waived by a retiree in order to claim disability benefits. 10 USC § 1408(a)(4)(B).

Seven years after the enactment of the FSPA, the Supreme Court was called upon to "decide whether state courts, consistent with the [FSPA], may treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits." *Mansell v. Mansell*, 490 US 581, 583, 109 S Ct 2023, 104 L Ed 2d 675 (1989). In *Mansell*, the parties' 23-year marriage ended in 1979, as the result of a divorce decree from the California Superior Court. *Id.* at 585. At the time of the decree, the husband was receiving Air Force retirement pay and, pursuant to a waiver of a portion of that pay, was also receiving disability benefits. *Id.* As part of the dissolution, the parties entered into a property settlement that divided the husband's military retirement pay in half, including the portion that he had waived. *Id.* at 586. Four years later, the husband asked the Superior Court to modify the decree by removing the provision of the property settlement that required him to share his total retired pay. The court denied the request without an opinion. *Id.* The husband appealed, and the California Court of Appeal affirmed. In an unpublished opinion, the court concluded that, after the FSPA, federal law no longer preempted California's community property laws. *Id.* The California Supreme Court declined to review the decision of the Court of Appeal. *Id.*

The United States Supreme Court reversed. The Court construed the FSPA as constituting only a *partial* rejection of *McCarty*. *Id.* at 588, 594. That is, the Court held that the FSPA authorizes state courts to divide retired pay as

set forth in that statute but not otherwise. More to the point, the FSPA does not expressly authorize state courts to divide military retirement pay that has been waived—indeed, the statute limits the definition of "disposable retired pay" in a way that excludes amounts that have been waived for the purpose of collecting disability. For that reason, the Court held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id.* at 594-95.

Our discussion of *Mansell*, though, does not end there. In a footnote in its opinion, the Court addressed the wife's alternative argument that, regardless of community property laws, "the doctrine of *res judicata* should have prevented this pre-*McCarty* property settlement from being reopened." *Id.* at 586 n 5. The Court explained:

> "The California Court of Appeal, however, decided that it was appropriate, under California law, to reopen the settlement and reach the federal question. * * * Whether the doctrine of *res judicata*, as applied in California, should have barred the reopening of pre-*McCarty* settlements is a matter of state law over which we have no jurisdiction. The federal question is therefore properly before us."

*Id.* However, on remand from the Supreme Court, the California Court of Appeal took issue with the high court's characterization of its decision. The Court of Appeal explained that, contrary to the Court's description in footnote 5, it had not "reopened" the dissolution judgment. The Court of Appeal attributed the confusion on that point to its failure "to sufficiently detail whether we were addressing the judgment or the motion to reopen the judgment." *In re Marriage of Mansell*, 217 Cal App 3d 219, 225, 265 Cal Rptr 227, 230 (1989), *cert den*, 498 US 806 (1990). After clarifying that it had not reopened the judgment, the California court upheld the division of the husband's disability benefits under the doctrine of *res judicata*. 217 Cal App 3d at 235, 265 Cal Rptr at 236. The husband filed another petition for a writ of *certiorari*, but, this time, the Supreme Court denied it. So, in the end, the husband's total military retired pay in *Mansell* was divided—albeit not pursuant to state community property laws.

In the years after *Mansell*, postjudgment waivers of retirement pay have "caused problems for courts and litigants across the nation in divorce cases where a percentage of military retirement benefits has been distributed as marital property." *In re Marriage of Gaddis*, 191 Ariz 467, 470-71, 957 P2d 1010, 1014 (Ariz Ct App 1997), *cert den*, 525 US 826 (1998) (internal quotation marks omitted).[3] Although courts have split on the question, the majority of courts have upheld the division of total retired pay (including any waived portion), on a number of different grounds. Some have reasoned that *Mansell* should be strictly limited to circumstances in which military retired pay has already been waived at the time of the decree.[4] Others have relied on the doctrine of *res judicata*[5] or principles of contract law.[6] A small minority of courts have held that federal law precludes any court-ordered division of veterans' disability benefits, even as the result of a settlement agreement.[7]

---

[3] Courts tend to agree that, in the absence of a prior order or agreement that divides the benefits, *Mansell* is controlling. *See* Brett R. Turner, *State Court Treatment of Military and Veteran's Disability Benefits: A 2004 Update*, 16 No 5 Divorce Litig 76, 79 (2004) (canvassing cases to that effect).

[4] *See, e.g., Black v. Black*, 842 A2d 1280, 1284-85 (Me 2004) ("Because *Mansell* explicitly addressed the [FSPA] as precluding a state divorce court from treating military retirement pay that had previously been converted to disability pay 'as property divisible *upon* divorce,' (emphasis added) we agree with those jurisdictions that conclude that the [FSPA] does not limit the authority of a state court to grant postjudgment relief when military retirement pay previously divided by a divorce judgment is converted to disability pay, so long as the relief awarded does not itself attempt to divide disability pay as marital property.").

[5] *See, e.g., Mansell*, 217 Cal App 219, 265 Cal Rptr 227.

[6] *See, e.g., Gatfield v. Gatfield*, 682 NW2d 632, 636 (Minn Ct App 2004) ("Neither the Supreme Court's holding in *Mansell* nor the [FSPA] precludes a veteran from voluntarily entering into a contract whereby he or she agrees not to waive retirement pay in favor of disability benefits and to indemnify a former spouse for any loss the spouse might incur should the veteran choose to waive any portion of retirement pay."); *White v. White*, 152 NC App 588, 592 n 1, 568 SE2d 283, 285 n 1 (2002), *aff'd per curiam*, 357 NC 153, 579 SE2d 248 (2003) (*Mansell* "does not prohibit military spouses from contracting away their disability benefits.").

[7] *See, e.g., Ryan v. Ryan*, 257 Neb 682, 691, 600 NW2d 739, 745 (1999) (*res judicata* did not bar collateral attack on an earlier dissolution judgment dividing veteran's disability benefits; trial court lacked subject matter jurisdiction to divide those benefits, and prior judgment was therefore void); *In re Marriage of Pierce*, 26 Kan App 2d 236, 240, 982 P2d 995, 998 (1999) ("*Mansell* makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran."); *cf. Abernethy v. Fishkin*, 699 So 2d 235, 239 (Fla 1997) ("[D]ivision of veterans' disability benefits, whether through court order or settlement agreement, [is] preempted by federal law"; nonetheless, indemnity agreement that

The parties agree that this case presents, as a matter of first impression in Oregon, the issue that has split state courts in the wake of *Mansell*: Do federal military retired pay statutes, including the FSPA, preclude an Oregon court from enforcing a previously adjudicated property settlement as to military retired pay? For the reasons that follow, we join the nearly universal majority of state courts that have held that they do not.

The "federal question" in *McCarty* and *Mansell* was a narrow one: Whether federal law preempts the application of state community property laws to military retired pay. Neither case, however, addressed whether a military service member could be bound—under state law principles—to the terms of a previous property settlement regarding military retired pay. To be sure, the parties in *Mansell* had entered into such a property settlement, but the legal effect of that settlement was not an issue decided by the Supreme Court. Rather, the Supreme Court assumed (inaccurately, according to the California Court of Appeal) that the initial dissolution judgment had been "reopened," thereby raising a federal question regarding preemption of California's community property laws. 490 US at 586 n 5.

■ In this case, the trial court was not asked to "reopen" or change the property division as to military retired pay as adjudicated in a final dissolution judgment. Rather, the trial court was asked to enter a DRO that would carry out the parties' previous property settlement in that regard—a settlement that was reduced to and reflected by a judgment entered by the court.[8] Thus, the 1998 judgment was interlocutory in that it left the mathematical details of the division to

---

allows wife to later obtain damages in the amount of husband's waived retirement benefits is enforceable.).

[8] Although section 6.3 of the dissolution judgment purports to grant the trial court jurisdiction over the division of the retirement benefits to "make any modifications to this judgment which may be necessary to accomplish the goals stated herein[,]" we do not understand the trial court to have modified the 1998 judgment regarding military retired pay. For that reason, we need not consider the legal effect of that language in the 1998 judgment. *Compare Harkins and Harkins*, 200 Or App 468, 470, 115 P3d 981 (2005), *rev den*, 340 Or 672 (2006) ("The authority of a trial court to modify a judgment of dissolution of marriage is solely statutory."), *with St. Sauver and St. Sauver*, 196 Or App 175, 180-81, 100 P3d 1076 (2004) (describing, but not resolving, the question whether language in a dissolution judgment can confer authority to subsequently modify that judgment).

a subsequent DRO, but it was final as to what was actually divided. And in that respect, the trial court concluded, based on the evidence before it, that husband and wife both intended that the property settlement would award wife 50 percent of husband's total military retired benefits. *See McDonnal and McDonnal*, 293 Or 772, 780, 652 P2d 1247 (1982) ("Questions relating to the construction, operation, and effect of property settlement agreements between a husband and wife are governed, in general, by the rules and provisions applicable in other contract cases. As in all contract disputes, resolution depends upon the intent of the parties as evidenced by the language of the document, or, where ambiguity exists, by extrinsic evidence."). Based on our *de novo* review of the record, we agree with the trial court's factual finding regarding the parties' intent.

The issue decided by the trial court is not a determination that implicates the FSPA and its preemptive effect. Under state law, husband is bound by the terms of the previous judgment, which incorporated the terms of the settlement agreement. *McDonnal*, 293 Or at 779 ("Once approved by the court and incorporated into the decree, agreements entered into by the parties are to be enforced as a matter of public policy.").[9] Nothing in *Mansell*, *McCarty*, or the FSPA precludes that result. *See Gatfield v. Gatfield*, 682 NW2d 632, 637 (Minn Ct App 2004) ("The Supreme Court's holding in *Mansell* is not contrary to this well-settled principle" that parties to a dissolution proceeding are "free to bind themselves to obligations that a court could not impose."). In fact, the enforcement of the terms of a property settlement agreement that has been reduced to judgment is entirely consistent with the Supreme Court's conclusion in *Mansell* that an analogous issue—whether the doctrine of *res judicata* prevents a property settlement from being reopened—presents a "matter of state law over which [the Supreme Court has] no jurisdiction." 490 US at 586 n 5. For the foregoing reasons, we reject husband's contention that the trial court's division of husband's retired pay, which carried out the terms of a previous dissolution judgment, is preempted by federal law.

---

[9] Husband does not contend that the agreement is void for public policy reasons under state law.

■ In his second assignment, husband contends that the trial court erred in awarding wife a survivor annuity that was not part of the initial dissolution judgment. As previously noted, the DRO orders husband to make wife the irrevocable beneficiary of his survivor benefit plan. That provision, in relevant part, states:

> "The Court hereby orders that [wife] shall be treated as the [husband's] irrevocable beneficiary under the Survivor Benefit Plan ('SBP'). [Husband] shall be required to make the necessary election in a timely manner to effectuate the SBP coverage for the Former Spouse, and shall execute such paperwork as is required. The level of SBP coverage that [husband] is ordered to elect shall be based on a reduced base dollar amount [calculated as described below]."

According to husband, an interest in the survivor benefit plan was not contemplated in the original dissolution judgment, and its inclusion in the DRO impermissibly alters the property division. *See Spady v. Graves*, 307 Or 483, 488-89, 770 P2d 53 (1989) (subject to certain statutory exceptions, courts have no authority to modify original property divisions).

Wife, meanwhile, contends that, under the terms of the dissolution judgment, the trial court retained jurisdiction "of the division of the retirement benefits described herein so it can make any modifications to this judgment which may be necessary to accomplish the goals stated herein relating to the division of said benefits." In her view, "the inclusion of a survivor benefit in the DRO does nothing more than ensure that Wife receives her appropriate marital share of his retirement, regardless of the possible death of [husband]."

Wife's argument notwithstanding, nothing in the language of the 1998 judgment suggests that the court retained authority to award wife *survivor* benefits. Rather, the judgment provides that the court retained jurisdiction to effect the "division of the retirement benefits." Moreover, there is no indication in the record that the parties ever contemplated that wife, as part of the dissolution proceeding, would receive a death benefit—a property interest discrete from her interest in husband's military retired pay. Thus, to

the extent that the DRO awarded wife benefits that were not part of the original property division, it erred. *See Spady*, 307 Or at 488-89. For that reason, we reverse and remand with instructions to delete that provision of the DRO.

■ Husband's third assignment of error challenges the trial court's award of attorney fees. Because we have reversed the trial court's determination that wife was entitled to survivor benefits, we remand for the trial court to reconsider wife's asserted entitlement to attorney fees in light of that disposition. *See Proctor and Proctor*, 203 Or App 499, 125 P3d 801 (2005), *adh'd to as modified on recons*, 204 Or App 250, 129 P3d 186, *rev den*, 340 Or 672 (2006).

Supplemental judgment reversed and remanded with instructions to delete provision concerning survivor annuity; supplemental judgment for attorney fees vacated and remanded for reconsideration; otherwise affirmed.