*Court Of Appeals*
*Fourth Court of Appeals District of Texas
San Antonio*

★ ★ ★  ★ ★ ★

## OPINION

No. 04-09-00117-CV

Jacqueline **JACKSON**,
Appellant

v.

Lugene **JACKSON**,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 1993-1037-CV
Honorable W. C. Kirkendall, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
          Sandee Bryan Marion, Justice
          Rebecca Simmons, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

Jacqueline Jackson appeals the trial court's order denying her motion for enforcement of a provision in a divorce decree relating to the military retirement of her former spouse, Lugene Jackson. Jacqueline asserts the trial court erred in denying her motion because Lugene's election to receive combat related special compensation (CRSC) breached his fiduciary duty to protect Jacqueline's interest in Lugene's disposable retired pay and violated his obligations as constructive

trustee of Jacqueline's interest. Constrained by federal legislation and binding court precedent, we are forced to affirm the trial court's order.

## BACKGROUND

Lugene and Jacqueline were divorced in 1994. With regard to the division of Lugene's military retirement benefits, the decree provided that Jacqueline was awarded the following as her sole and separate property:

> As agreed between the parties, . . . all right, title and interest in and to thirty-nine and fifty-eight hundredths (39.58%) percent of the United States Army disposable retired or retainer pay to be paid as a result of LUGENE JACKSON'S service in the United States Army, and thirty-nine and fifty-eight hundredths (39.58%) percent of all increases in the United States Army disposable retirement or retainer pay due to cost of living or other reasons, if, as, and when received, and commencing June 1, 1994.

The decree further provided for the Secretary of the Army or his designated agent to pay to Jacqueline directly, each month, "her interest awarded in this decree in the United States Army disposable retired or retainer pay paid as a result of LUGENE JACKSON'S service in the United States Army . . . if, as, and when that retirement pay is due to be paid." Finally, the decree provided:

> IT IS FURTHER ORDERED AND DECREED that LUGENE JACKSON is appointed trustee for the benefit of JACQUELINE JACKSON to the extent of JACQUELINE JACKSON'S interest in the United States Army disposable retired or retainer pay paid as a result of LUGENE JACKSON'S service in the United States Army, and LUGENE JACKSON is ORDERED to pay to JACQUELINE JACKSON her interest in that pay each month as it is received by LUGENE JACKSON and in no event later than the fifth day of each month in which LUGENE JACKSON receives that retirement pay beginning the fifth day of June, 1994. This paragraph applies to the extent that the Secretary of the Army or his designee fails to pay directly to JACQUELINE JACKSON her monthly entitlement as awarded in this decree, or any portion of that monthly entitlement.

Pursuant to the decree, the Defense Finance and Accounting Service (DFAS) paid Jacqueline a monthly amount from May of 1995 until May of 1999, when Lugene received a 100% disability

rating. At that time, military retirees were required to waive a portion of their gross retired pay, dollar for dollar, equal to the amount of their entitlement to Department of Veterans Affairs (DVA) compensation. When Lugene received a 100% disability rating, his DVA compensation was greater than his military retired pay, resulting in the suspension of his retired pay from June 1, 1999 through December 1, 2003.

Effective January 1, 2004, a change in the law permitted the concurrent receipt of military retired pay and disability compensation from the DVA, commonly known as "Concurrent Retirement Disability Pay" (CRDP). Accordingly, Jacqueline again began receiving a monthly payment from DFAS. Another change in the law, however, permitted Lugene to elect to receive CRSC in lieu of CRDP. When Lugene elected to receive CRSC toward the end of 2004, Jacqueline was no longer entitled to receive any payments from DFAS because CRSC is not considered to be retired pay.

Jacqueline filed a motion for enforcement on January 7, 2005. Among other claims, Jacqueline asserted that Lugene was appointed as constructive trustee of the receipt and payment of Jacqueline's share of his disposable retired pay. Jacqueline asserted that Lugene breached his fiduciary duty as trustee by waiving his entitlement to receive military retired pay in order to receive CRSC.

After a hearing, the trial court denied Jacqueline's motion. In its order, the trial court made the following findings:

> The party's divorce decree provides that Petitioner is to receive 39.58% of Respondent's "United States Army disposable retired or retainer pay" plus any COLAs commencing on June 1, 1994. Respondent was appointed trustee for the purpose of paying Petitioner her [interest in] the retirement pay if DFAS did not pay it directly to Petitioner.

Subsequently, Respondent made application for Combat Related Special Compensation (CRSC). 10 USCA 1413a specifically provides CRSC is not retired pay, but replaces retired pay to the extent permitted in Title 38, §§5304-5305. In Mansell v. Mansell, 490 U.S. 581, (1989), the U.S. Supreme Court held that state courts are prevented from dividing veteran's disability pay. The Court finds the CRSC has the same status.

The Court finds there was no provision in the decree requiring Respondent to pay a specific amount from retirement, prohibiting him from making application for benefits, or requiring him to indemnify Petitioner in the even[t] her share was reduced by an election. The decree does not contain a provision that it is enforceable as a contract, only that the parties agreed to "certain terms" and that the Court has approved and adopted the agreement.

Jacqueline appeals the trial court's order.

### DISPOSABLE RETIRED PAY

In *McCarty v. McCarty*, 453 U.S. 210 (1981), the United States Supreme Court held that federal statutes then governing military retirement pay prevented state courts from treating military retirement pay as community property. In direct response to *McCarty*, Congress enacted the Uniformed Services Former Spouses' Protection Act ("FSPA"), which authorized state courts to treat "disposable retired or retainer pay" as community property. *Mansell v. Mansell*, 490 U.S. 581, 584 (1989). The federal statutes expressly defined "disposable retired or retainer pay" and required any amounts waived in order to receive disability benefits to be excluded from "disposable retired or retainer pay." *Id*. at 584-85.

In *Mansell*, the United States Supreme Court addressed whether state courts, consistent with the FSPA, could treat military retirement pay waived by the retiree in order to receive veterans' disability benefits as property divisible upon divorce. 490 U.S. at 583. Although noting that domestic relations are preeminently matters of state law, the United States Supreme Court asserted that the case presented one of those rare instances where Congress had directly and specifically

legislated in the area of domestic relations. *Id*. at 587. The Court further noted that Congress enacted the FSPA to change the legal landscape created by the *McCarty* decision. *Id*. The Court asserted, "Because pre-existing federal law, as construed by [the] Court, completely pre-empted the application of state community property law to military retirement pay, Congress could overcome the *McCarty* decision only by enacting an affirmative grant of authority giving the States the power to treat military retirement pay as community property." *Id*. at 588.

Although the Court noted that the FSPA affirmatively granted state courts the power to divide military retirement pay, the Court asserted that the language of the Act "is both precise and limited." *Id*. "It provides that 'a court may treat disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the laws of the jurisdiction of such court.'" *Id*. at 588-589. The Act's definitional section, however, "specifically defines the term 'disposable retired or retainer pay' to exclude, *inter alia*, military retirement pay waived in order to receive veterans' disability payments." *Id*. at 589. "Thus, under the Act's plain and precise language, state courts have been granted the authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay as community property." *Id*.

After reviewing the legislative history, the Court concluded that "Congress intended both to create new benefits for former spouses and to place limits on state courts designed to protect military retirees." *Id*. at 594. With regard to the effect its reading of the statute might have on the former spouse, the Court asserted:

> We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain

> language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Id*. Accordingly, the Court held that the FSPA "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Id*. at 594-95.

From the foregoing authorities, it is apparent that the term "disposable retired and retainer pay" had been defined by federal law at the time the parties' divorce decree was signed in 1994. At that time, it was also apparent that a state court would be precluded from dividing pay that was excluded from that definition. In *Sharp v. Sharp*, this court considered whether an ex-husband violated the terms of a divorce decree awarding the ex-wife a percentage of disposable retired pay if, as, and when it was received by not paying the spouse a percentage of his CRSC payments. 2009 WL 3298131, at *1-2 (Tex. App.—San Antonio Oct 14. 2009, no pet. h.). Because the federal statute authorizing the payment of CRSC expressly provided that such payments "are not retired pay," we held the decree did not divide CRSC. *Id*. at *2.

### CONSTRUCTIVE TRUST/BREACH OF FIDUCIARY DUTY

In this court's decision in *Sharp*, we primarily relied on the Texas Supreme Court's decision in *Hagen v. Hagen*, 282 S.W.3d 899 (Tex. 2009). In *Hagen*, the parties' 1976 divorce decree awarded the ex-wife, Doris, right, title and interest to a percentage of the ex-husband's, Raoul's, retirement pay or military retirement pay if, as, and when received. 282 S.W.3d at 901. The decree also appointed Raoul as trustee of Doris's percentage of "all Army Retirement Pay or Military Retirement Pay" for Doris's use and benefit, and ordered Raoul to pay Doris her percentage of the retirement or military retirement pay immediately upon his receipt of the same. *Id*.

Raoul retired in 1992, and his retirement compensation consisted entirely of military retirement pay. *Id*. In 2003, however, Raoul was determined to have a 45% disability rating, and he elected to waive part of his retirement pay and be paid VA disability in its place since VA disability was not subject to federal income taxes. *Id*. Doris filed a motion for contempt, clarification of decree, and petition for damages, asserting she was entitled to her percent of the gross retirement pay. *Id*. Doris alleged that Raoul breached a fiduciary duty by electing to be paid disability pay and waiving part of his retirement pay. *Id*.

The Texas Supreme Court held that the decree awarded Doris a percentage of the military retirement pay Raoul received. *Id*. at 908. The decree did not provide Doris with any right to receive payments calculated on any other basis, or that she was to receive part of Raoul's disability compensation. *Id*. Although the court noted that Doris asserted a claim against Raoul for breach of fiduciary duty, the court concluded Doris had not presented any issues regarding the denial of that claim on appeal. *Id*.

In a dissenting opinion, Justice Brister commented on the breach of fiduciary duty claim, asserting:

> The decree here did not just award Doris part of Raoul's retirement pay; it also appointed him trustee of those funds for her use and benefit. As a result, it is hard to see how his decision to waive those funds did not breach his fiduciary duty as her trustee.

*Id*. at 912 (Brister, J., dissenting).

In her brief, Jacqueline heavily relies on this comment by Justice Brister and a recent opinion from an Oregon appellate court. *See In re Marriage of Hayes*, 208 P.3d 1046 (Ore. Ct. App. 2009). In *In re Marriage of Hayes*, at the time of the parties' divorce in 1998, the husband had served 15

years in the military. 208 P.3d at 1048. Although the husband was not entitled to retire, the prospective military retirement pension was the most valuable asset in the marriage, making it the "centerpiece" of the parties' property division. *Id*.

The parties agreed to a property settlement in which the wife was to receive a percentage interest in the husband's military retirement benefit plan. *Id*. The decree expressly provided, "The Court retains jurisdiction of the division of the retirement benefits described herein so it can make any *modifications* to this judgment which may be necessary to accomplish the goals stated herein relating to the division of said benefits." *Id*. (emphasis added). The husband was to retain an attorney to prepare a domestic relations order to divide the benefits. *Id*. After the attorneys for the parties prepared competing domestic relations orders, the matter was set for a hearing. *Id*.

At the time of the hearing, the husband had served 23 years in the military. *Id*. Although he was eligible to retire, he had no immediate plans to do so. *Id*. The husband was not disabled at the time of the hearing; however, it was possible that he would become disabled and receive disability benefits after retirement. *Id*.

The trial court entered a domestic relations order awarding the wife 50% of the marital portion of the husband's "disposable military retired pay." *Id*. at 1049. The order contained numerous provisions designed to prevent the husband from reducing the amount of his "disposable military retired pay" through waivers, including waivers related to his receipt of disability benefits. *Id*. The husband appealed, asserting federal law limits the divisible portion of a service member's military retired pay to "disposable retired pay;" therefore, the order conflicted with federal law. *Id*.

The Oregon court noted that the case presented an issue of first impression in Oregon, i.e., "Do federal military retired pay statutes, including the FSPA, preclude an Oregon court from

enforcing a previously adjudicated property settlement as to military retired pay?" *Id*. at 1052. Holding that the trial court properly found, based on the evidence before it, that both parties intended that the property settlement would award the wife 50 percent of the husband's total military retirement benefit, the court held the husband was bound by the terms of the settlement agreement. *Id*. at 1052-53. The court noted that its enforcement of the terms of the property settlement agreement was consistent with the United States Supreme Court's conclusion in *Mansell* that state law determines whether the doctrine of *res judicata* prevents a property settlement from being reopened. *Id*. at 1053.

The decision in *In re Marriage of Hayes* is distinguishable from the instant case. First, in the *Hayes* decree, the wife was awarded an interest in the husband's military retirement benefit plan as opposed to being awarded a percentage of his "disposable military retired pay," and the trial court found the parties intended to award the wife 50% of the husband's ***total*** military retirement benefits. *See In re Marriage of Hayes*, 208 P.3d at 1048, 1052. In addition, the decree expressly gave the trial court continuing jurisdiction to ***modify*** the decree to accomplish the goals relating to the division of the retirement benefits, as opposed to the decree in the instant case in which the trial court was limited to clarifying the existing language. *See id*. at 1048.

Most interestingly, the theory underlying Jacqueline's claim and her issue on appeal is that the election by Lugene to receive CRSC was a breach of his fiduciary duty. Such an obligation is never discussed in *In re Marriage of Hayes* which principally relies on enforcing the intent of the parties as expressed in the language of the decree.

The nature of the trust relationship created by the divorce decree in the instant case must be determined by the language used in the decree. In the decree, Lugene was appointed trustee to the

extent of Jacqueline's interest in the disposable retired pay paid as a result of Lugene's service in the army. Accordingly, Lugene's obligations as trustee arose only in the event disposable retired pay was paid as a result of Lugene's service. The final paragraph in that section of the decree expressly stated that the trustee provisions applied only if the federal government failed to directly pay Jacqueline her monthly entitlement.

In view of the express language used in the divorce decree, we conclude Lugene never had any obligation as a trustee under the terms of the decree for two reasons. First, the evidence showed that Lugene never received any portion of Jacqueline's interest in disposable retired pay. Instead, DFAS directly paid Jacqueline her interest in any disposable retired pay that was paid. In addition, CRSC is paid as a result of Lugene's disability, not as a result of his service. *See* 10 U.S.C. §1413a. Since Jacqueline had an interest only in disposable miliary pay paid as a result of Lugene's service, Jacqueline had no interest in, and Lugene had no fiduciary obligation with regard to, Lugene's CRSC, which was paid as a result of Lugene's disability.

Moreover, it would appear that Jacqueline's argument is contrary to the Texas Supreme Court's holding in *Ex parte Burson*, 615 S.W.2d 192 (Tex. 1981). In *Burson*, the husband was ordered to pay the wife $375.00 per month out of his Air Force disability retirement pay pursuant to the terms of a 1978 divorce decree. *Id*. at 193. In addition, the decree provided that the husband would hold the $375.00 out of his monthly disability retirement check in constructive trust for the wife. *Id*. After the date of the divorce, the husband waived his Air Force disability retirement pay in exchange for VA disability benefits. *Id*.

The Texas Supreme Court noted that military disability retirement pay and VA benefits were established by different statutory schemes. *Id*. at 195. "The statutes control the property

characterization of each and the fact of, or lack of, federal preemption of each." *Id*. Although the trial court had concluded that the husband could not defeat the force of the divorce decree by his voluntary act, the Texas Supreme Court concluded that federal law empowered the husband to make the election. *Id*. at 196. The court held that "a divorce decree cannot prohibit Burson from doing that which the federal law properly gave him a right to do so." *Id*.; *see also Ghrist v. Ghrist*, No. 03-05-00769-CV, 2007 WL 1372690, at *3 (Tex. App.—Austin May 11, 2007, pet. denied) (holding res judicata did not bar ex-husband from raising defense that federal law preempts and bars enforcement of provision that prohibited ex-husband from waiving military retirement to obtain VA disability benefits) (mem. op.); *Freeman v. Freeman*, 133 S.W.3d 277, 280 (Tex. App.—San Antonio 2003, no pet.) (limitation in divorce decree seeking to prevent ex-husband from reducing disposable retired pay in the future by waiving a portion of the pay for other types of benefits including Veteran's benefits held contrary to Texas and federal law). Given that federal law allows a retiree to elect to receive CRSC, a finding that such an election by a former spouse could constitute a breach of a fiduciary duty or other obligation created by a divorce decree would appear to be contrary to the holding in *Burson*.

**CONCLUSION**

The divorce decree in the instant case awarded Jacqueline a percentage of Lugene's "disposable retired military pay." At the time the decree was signed, federal law had developed such that "disposable retired military pay" was defined by federal statute. Lugene was appointed trustee over Jacqueline's interest in "disposable retired military pay" that was actually paid as a result of Lugene's service. Since Lugene was never in receipt of any of Jacqueline's interest in disposable retired pay that was paid, he did not breach any fiduciary duty. The decree contained no language

pursuant to which Lugene agreed not to make any elections waiving disposable retired pay, and the enforceability of such language would be questionable based on the Texas Supreme Court's holding in *Burson* and the federal statutes which empower Lugene to make such elections. "Congress chose the language that requires us to decide as we do, and Congress is free to change it.' *Mansell*, 490 U.S. at 584; *see also Sharp*, 2009 WL 3298131, at *2-3 (Barnard, J., concurring) (noting federal statute can lead to grossly unfair results). Constrained by the applicable law, we reluctantly affirm the trial court's order.

Catherine Stone, Chief Justice