Ronald A. RESARE

v.

Susan G. RESARE.

No. 2004–308–Appeal.

Supreme Court of Rhode Island.

Oct. 31, 2006.

Ronald A. Resare, pro se.

Kathleen Managhan, Esq., Newport, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on October 3, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.[1] After reviewing the memoranda that the parties submitted, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. We affirm the judgment.

This is a post-judgment divorce case. The facts in this case are not in dispute. The plaintiff, Ronald A. Resare (plaintiff or Ronald), and defendant, Susan G. Resare (Susan), were married on June 13, 1963. In 1985, after twenty-two years of marriage, Ronald filed for divorce. A final decree was entered on March 3, 1986. A property settlement agreement (PSA) signed by the parties was incorporated,

---

1. Because the plaintiff, Ronald A. Resare, who is *pro se*, failed to appear at oral argument, we decide this case on the basis of the briefs.

but not merged, into the final decree. As part of the PSA, Susan was allocated 35 percent of Ronald's gross pension from the Navy.[2] She received monthly payments directly from Ronald. Susan continued to receive checks from Ronald until 1988, at which time the "benefits were paid directly to her by the United States Treasury." *In re Resare*, 142 B.R. 44, 45 (Bankr.D.R.I. 1992).

In 1991, Ronald encountered some financial rough seas; he filed for Chapter 7 bankruptcy and sought to discharge as a debt Susan's claim to 35 percent of his pension. *Id.* at 44–45. Susan filed a cross-complaint alleging that her entitlement to Ronald's pension benefits should survive the pending bankruptcy. *Id.* at 45 n. 3. The Bankruptcy Court agreed and determined that Susan's interest in Ronald's pension was not a debt that was dischargeable in bankruptcy. *Id.* at 46. Rather, the Bankruptcy Court found that Susan had been granted a property interest in her former husband's pension by way of the PSA that was incorporated into the divorce decree. *Id.*

Refusing to give up the ship, Ronald appealed to the District Court, which ruled that although the PSA did not "unambiguously create a property transfer," *Resare v. Resare*, 154 B.R. 399, 401 (D.R.I.1993), the parties themselves later had resolved any existent ambiguity by arranging for Susan to receive her payments directly from the government, rather than from Ronald. *Id.* at 401–02. This change "demonstrate[d] their intent that the division of the pension was to be a property transfer." *Id.* at 402.

In 1997, Ronald's application for a disability pension from the Veterans Administration was approved. Because he was receiving disability benefits, Ronald's Navy pension was reduced and Susan's 35 percent share was proportionally reduced. Ronald's disability benefit was again increased in 2000, and the resulting reductions to his Navy pension further reduced Susan's benefits. Finally, in 2003, Ronald's disability benefit was increased to 100 percent and Susan's benefits were "significantly reduced" although not altogether eliminated.[3]

On April 23, 2003, Susan filed this action seeking to enforce the terms of the PSA that both parties agreed to in 1986. In a bench decision on December 5, 2003, the Family Court hearing justice found that Ronald impermissibly had modified the PSA when he "unilaterally applied for disability benefits" and that he had breached the contract between the parties. The court entered judgment on July 21, 2004, ordering that Susan receive a sum equal to 35 percent of the gross pension the husband would have received, had he not "unilaterally modified the contract and breached the agreement."

Ronald appealed the Family Court judgment to this Court. On October 26, 2004, Susan filed a motion in this Court seeking a remand to secure an amended judgment, setting forth Ronald's obligation to Susan for the money he owed her. On remand, the hearing justice entered an amended

---

**2.** Paragraph 11 of the PSA provides:
"The wife shall be entitled to receive as a property settlement, a sum equal to thirty-five (35%) percent of the gross pension of the husband. The husband shall also sign all necessary documents in order to provide all other benefits through the United States Government for the benefit of said wife, including medical and commissary benefits, to the extent the wife is entitled to such benefits."

**3.** Because Ronald's Navy pension was greater than his total disability benefit, Susan continued to receive some benefits, albeit a diminished amount.

judgment on December 15, 2004, declaring that $13,253 was owed. Ronald was ordered to pay Susan, on a monthly basis, an additional $618 as a continuing judgment.

■ Ronald raises several issues on appeal. He argues that the Family Court impermissibly interpreted the word "gross" as used in the original PSA in contravention of settled state and federal caselaw. See Mansell v. Mansell, 490 U.S. 581, 594–95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (holding that military retirement pay that had been waived by former husband to receive veterans' disability benefits was not community property divisible upon divorce); Goodson v. Goodson, 744 A.2d 828, 831 (R.I.2000) (holding that " 'disposable retirement pay' " from military pension was equal to gross retirement pay less federal income taxes). Additionally, plaintiff asserts that the Family Court's 2003 judgment does not follow the prior decisions of the Bankruptcy Court and the United States District Court and that the Family Court's award of damages was improperly calculated to include cost of living allowances. The plaintiff also alleges that Susan's 2003 claim should have been barred by the doctrine of laches.[4]

■ This Court's review of a trial justice's interpretation of a contract is de novo. Zarrella v. Minnesota Mutual Life Insurance Co., 824 A.2d 1249, 1259 (R.I. 2003) (citing Lerner v. Ursillo, 765 A.2d 1212, 1217 (R.I.2001)). Additionally, "our standard of review of the findings of fact by a trial justice in a non-jury case is deferential." Barone v. Cotroneo, 711 A.2d 648, 649 (R.I.1998). "We shall not disturb such findings unless they are clearly wrong or unless the trial justice has overlooked or misconceived relevant and material evidence." Id.

■ It should be noted at the outset that the Family Court is vested with the authority to enforce property settlement agreements arising in divorce proceedings and does so "with special attention and with a concern for the equities of the situation." Gorman v. Gorman, 883 A.2d 732, 737 (R.I.2005). Additionally, we previously have endorsed the principle that "[a]greements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith." Christian v. Christian, 42 N.Y.2d 63, 396 N.Y.S.2d 817, 365 N.E.2d 849, 855 (1977).

■ In interpreting the parties' original PSA, the Family Court specifically acknowledged the Supreme Court's holding in Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). In Mansell, the Court interpreted certain provisions of the Uniformed Services Former Spouse's Protection Act (USFSPA) 10 U.S.C. § 1408. The USFSPA authorizes state courts to divide military retirement pensions as part of divorce proceedings to the extent of the service member's "disposable retired pay." 10 U.S.C. §§ 1408(a)(4); 1408(c). In Mansell, the United States Supreme Court held that although the USFSPA allows division of a serviceperson's retirement pay, the state courts may not, as part of a divorce proceeding, divide or allocate "military retirement pay that has been waived to receive veteran's disability benefits." Mansell, 490 U.S. at 594–95, 109 S.Ct. 2023. In Mansell, the property settlement agreement sought to

---

4. Ronald also argues that the PSA did not survive his 1991 bankruptcy and that federal law regulating the distribution of military pensions in divorce proceedings, enacted long after his 1986 divorce, can not constitutional-ly be applied to him. As neither of these two issues were properly raised below, we need not address them on appeal. See Pollard v. Acer Group, 870 A.2d 429, 432 (R.I.2005).

divide the husband's disability benefits that he was receiving at the time of the divorce. *Id.* at 585–86, 109 S.Ct. 2023. The Supreme Court held this to be impermissible under the USFSPA. *Id.* at 595, 109 S.Ct. 2023. That is not what happened here.

In our opinion, the Family Court did not in any way divide Ronald's *disability* benefit in contravention of *Mansell,* but simply held Ronald to the terms of the original PSA and ordered payment of an amount calculated in accordance with the agreed upon PSA. The Court refused to allow Ronald unilaterally to amend the PSA.

In its 2004 judgment, the Family Court declared that it was "not order[ing] a division of any disability retirement benefits." Rather, the Court merely declared that plaintiff must pay to defendant a sum equal to the 35 percent of the gross pension that would have been in effect if Ronald had not unilaterally modified the PSA and breached the agreement. The Family

Court quite properly treated Susan's claim as one sounding in breach of contract, entitling her to damages; other courts have similarly dealt with comparable situations. *See, e.g., Dexter v. Dexter,* 105 Md. App. 678, 661 A.2d 171 (1995); *Krapf v. Krapf,* 439 Mass. 97, 786 N.E.2d 318 (2003); *Johnson v. Johnson,* 37 S.W.3d 892 (Tenn.2001).

Because we have determined that plaintiff's arguments on the other issues he raises are wholly without merit, we need not address them.

For the reasons set forth herein, we affirm the judgment of the Family Court.

Justice SUTTELL did not participate.