MEGEE v CARMINE

Docket No. 292207. Submitted November 2, 2010, at Detroit. Decided November 16, 2010, at 9:00 a.m.

Joan C. Carmine moved in the Macomb Circuit Court, seeking to enforce a 1989 divorce judgment and an incorporated qualified domestic relations order (QDRO) that awarded her as part of the property division 50 percent of the disposable retirement pay that Ronald A. Megee would receive as a result of his service in the United States Navy. The QDRO provided that Megee could not make another benefit election that would reduce the monthly pension allotment without Carmine's written consent. However, Megee made a unilateral and voluntary postjudgment election to waive the retirement pay and instead receive monthly combat-related special compensation (CRSC), 10 USC 1413a, contrary to the terms of the divorce judgment. As a result, Carmine had ceased receiving funds under the QDRO. The court, Mary A. Chrzanowski, J., entered an order requiring Megee to act as trustee for the benefit of Carmine with respect to half of his monthly CRSC, which funds were then to be delivered to Carmine. Megee appealed by leave granted.

The Court of Appeals *held*:

1. Following a divorce, a military spouse remains financially responsible to compensate his or her former spouse in an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of their divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment. The compensation to be paid the former spouse as his or her share of the property division in lieu of the waived retirement pay may come from any source the military spouse chooses, but it must be paid to avoid contempt of court. The military spouse may use CRSC funds to satisfy the obligation if he or she chooses to do so. Because the ordered replacement compensation must relate to the military spouse's retirement-pay obligation and not the disability pay being received, and because the military spouse, having made the election, will no longer actually be receiving the retirement

pay, it may be necessary on occasion to review and determine whether any adjustments to the retirement pay would have been made had the military spouse continued receiving the retirement pay.

2. The Uniformed Services Former Spouses' Protection Act, specifically 10 USC 1408(c)(1), permits a court to treat only "disposable retired pay" as property of the service member and his or her spouse subject to division in a state court divorce decree. CRSC is not retired pay. Therefore, the trial court erred by dividing plaintiff's CRSC.

3. The ruling of the trial court that required Megee to pay Carmine from CRSC funds in an amount equal to half of his CRSC was reversed and the case remanded to the trial court for the entry of an order requiring Megee to compensate Carmine with monthly payments, from any source or combination of sources he chose, in an amount equal to 50 percent of the retirement pay that Megee would have been receiving but for his election to waive the retirement pay in favor of disability benefits.

Reversed and remanded.

ARMED SERVICES — DIVORCE — PROPERTY DIVISIONS — RETIREMENT PAY — POSTJUDGMENT ELECTIONS TO WAIVE RETIREMENT PAY — DISABILITY BENEFITS.

A military spouse remains financially responsible to compensate his or her former spouse in an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of their divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment; the compensation to be paid the former spouse as his or her share of the property division in lieu of the retirement pay can come from any source the military spouse chooses and must be paid to avoid contempt of court.

*Steven S. Vernier* for Ronald A. Megee.

Before: MURPHY, C.J., and METER and SHAPIRO, JJ.

MURPHY, C.J. Plaintiff appeals by leave granted the trial court's order that directed him to act as trustee for the benefit of defendant with respect to half of plaintiff's monthly combat-related special compensation

(CRSC), 10 USC 1413a, which funds were then to be delivered to defendant. We reverse and remand.

## I. OVERVIEW

Pursuant to a divorce judgment entered in September 1989, defendant was awarded 50 percent of plaintiff's Navy disposable retirement pay as part of the property division, and the judgment incorporated a qualified domestic relations order (QDRO) to enforce that provision. The QDRO acknowledged the 50 percent division of plaintiff's disposable retirement pay, also referred to therein as his pension, and it prevented plaintiff from making another benefit election "that would otherwise reduce the monthly pension allotment without the written consent of [defendant]."According to defendant, she began receiving her share of plaintiff's retirement pay in January 2008, although plaintiff claims that defendant had been receiving her share of his retirement pay since 1994. In 2008, plaintiff was officially diagnosed, for purposes of entitlement to disability benefits, as being disabled as a result of combat-related activities and exposure to Agent Orange in Vietnam. He was declared eligible to elect CRSC, but that election would require plaintiff to waive further receipt of his retirement pay. Plaintiff elected to receive CRSC, resulting in termination of his retirement pay and thus the cessation of funds flowing to defendant under the QDRO. Defendant moved to enforce the divorce judgment and the QDRO, and the trial court entered the challenged order that effectively forces plaintiff to pay defendant half of his CRSC.

We hold that following a divorce, a military spouse remains financially responsible to compensate his or her former spouse in an amount equal to the share of retirement pay ordered to be distributed to the former

spouse as part of the divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment. Conceptually, and consistently with extensive caselaw from other jurisdictions, we are dividing waived retirement pay in order to honor the terms and intent of the divorce judgment. Importantly, we are not ruling that a state court has the authority to divide a military spouse's CRSC, nor that the military spouse can be ordered by a court to pay the former spouse using CRSC funds. Rather, the compensation to be paid the former spouse as his or her share of the property division in lieu of the waived retirement pay can come from any source the military spouse chooses, but it must be paid to avoid contempt of court. To be clear, nothing in this opinion should be construed as precluding a military spouse from using CRSC funds to satisfy the spouse's obligation if desired. In these situations, because the ordered replacement compensation must relate to the military spouse's retirement-pay obligation and not the disability pay now being received, and because the military spouse, having made the election, will no longer actually be receiving the retirement pay, it may be necessary on occasion to review and determine whether any adjustments to the retirement pay would have been made had the military spouse continued receiving the retirement pay.

Accordingly, although we agree with the trial court that plaintiff must compensate defendant, we reverse the trial court's ruling because its order required plaintiff to pay defendant from CRSC funds and required plaintiff to pay an amount equal to half of his CRSC and not half of his envisioned retirement pay. We remand for entry of an order requiring plaintiff to compensate defendant with monthly payments, from any source or

combination of sources chosen, in an amount equal to 50 percent of the retirement pay that he would be receiving but for his election to waive the retirement pay in favor of disability benefits.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in June 1966 and had two children who were born in 1968 and 1971. Plaintiff is a veteran who served in the Navy from September 1966 to June 1970 and then again from March 1974 to June 1994. He engaged in combat-related activities and was exposed to Agent Orange while serving in Vietnam. On July 26, 1988, plaintiff filed a complaint for divorce, and subsequently defendant filed a counterclaim for divorce. On September 12, 1989, a divorce judgment was entered and, although not titled a consent judgment, it is clear from the record that it was entered with the consent of the parties; there was no trial. The divorce judgment dissolved the marriage; awarded defendant $100 a week in periodic spousal support for five years, or until her death or remarriage, whichever occurred first; ordered plaintiff to pay child support arrearages at the rate of $25 a week until the balance was paid in full; and divided the parties' property. The property-settlement portion of the judgment indicated that defendant was awarded a mortgagee's interest in a parcel of property located in Georgia, that plaintiff was ordered to pay all joint marital debts previously incurred, that plaintiff was awarded the entire interest in a vacation-resort membership, that defendant was awarded two motor vehicles, that the parties were awarded their own personal property that was in their possession, and that certain bonds were to be divided 60 percent to 40 percent, with defendant taking the larger share. The judgment further provided:

IT IS FURTHER ORDERED AND ADJUDGED that JOAN C. MEGEE shall be awarded 50% interest in RONALD A. MEGEE'S U.S. Navy disposable retirement or retainer pay at such time as he receives it. The parties approve and incorporate by reference a [QDRO] attached as Exhibit A of this Judgment of Divorce.

With respect to the QDRO referred to in the divorce judgment, it provided, in pertinent part, as follows:

7.) The parties agree and the Court orders that JOAN C. MEGEE shall receive fifty (50%) percent of RONALD A. MEGEE'S Navy disposable retirement or retainer pay as property settlement when he begins receiving the same.

*  *  *

11.) RONALD A. MEGEE shall make no other benefit election included but not limited to an annuity or survivorship option that would otherwise reduce the monthly pension allotment without the written consent of JOAN C. MEGEE.

*  *  *

13.) The parties agree that their mutual intent is to provide JOAN C. MEGEE with fifty (50%) percent of RONALD A. MEGEE's disposable retirement or retainer pay.

According to military records contained in the lower-court file, plaintiff ceased working at his job in May 2004.[1] The military was in possession of a record from the Social Security Administration (SSA) indicating that the SSA had characterized plaintiff as being disabled since February 2005. Plaintiff suffers from posttraumatic stress disorder (PTSD), peripheral neuropathy of the lower

---

[1] Plaintiff was no longer in the military at this point, and the record does not contain any information on the nature of the job that plaintiff stepped down from in May 2004.

extremities (left and right side), and diabetes mellitus. The Department of Veterans Affairs (VA), pursuant to a decision in August 2008, determined that "[t]he effective date of individual unemployability [was] June 30, 2006," for purposes of entitlement to VA combat-related disability pay, which is different from CRSC, as discussed hereinafter. The VA document indicates that plaintiff sought but was denied VA disability benefits in 2007, but the 2008 assessment found a "clear and unmistakable error" in the 2007 decision relative to ratings or percentages that the VA ascribes for each service-connected disability on the basis of severity and that affect the decision to award benefits.

Also in 2008, the Secretary of the Navy's Combat-Related Special Compensation Board (Board) approved plaintiff's application for CRSC, predicated, in part, on the VA's finding of a compensable disability, along with the Board's own independent findings that plaintiff's PTSD, neuropathies, and diabetes all resulted from either direct engagement in an armed conflict or through an instrumentality of war, in this case exposure to Agent Orange. The retroactive effective date for plaintiff's entitlement to CRSC was January 2008. As will be explained later in our review of the United States Code, plaintiff could not legally receive, in combination, his disposable retirement pay, VA disability benefits, and CRSC. Rather, he had to elect either retirement pay coupled with VA disability benefits or choose CRSC standing on its own. While there is a lack of documentary evidence on the subject, there is no dispute that plaintiff elected CRSC, effectively discontinuing receipt of his retirement pay and defendant's share of that pay.

Defendant argued in the trial court that she began receiving her assigned share of plaintiff's retirement

pay in January 2008 and received it through August 1, 2008, at which time she ceased receiving anything. Plaintiff claimed that defendant started receiving her 50 percent share of his disposable retirement pay in June 1994, not January 2008. The dispute on this matter was never addressed in the trial court, but we do note that plaintiff's military service ended in June 1994.

Defendant moved to enforce the divorce judgment and the QDRO in February 2009, asserting that plaintiff had elected, in violation of the judgment and the QDRO, to receive disability benefits, i.e., CRSC, instead of his retirement pay. Defendant requested that the trial court order plaintiff to withdraw his election to receive CRSC in place of retirement pay or, in the alternative, order plaintiff to act as a trustee relative to 50 percent of his benefits, given the clear intent to provide for an equal division reflected in the divorce judgment and the QDRO, and then order him to deliver the funds to defendant. In response, plaintiff admitted that he currently received CRSC, but countered that CRSC is not disposable retirement pay and that, for purposes of the divorce judgment and the QDRO, his election did not need defendant's approval because the approval provision only pertained to elections relative to variations under the broad umbrella of disposable retirement pay, not a disability-related election. Plaintiff maintained that, once he became eligible for and selected CRSC for his injuries sustained in service to his country, the disposable retirement pay subject to the QDRO was no longer subject to division. Relying on *Mansell v Mansell*, 490 US 581; 109 S Ct 2023; 104 L Ed 2d 675 (1989), plaintiff further contended that federal law precluded the court from ordering him to give any of his CRSC to defendant, which, admittedly, left defendant with nothing.

Finding it to be the fair thing to do, given the clear intent in the divorce judgment and the QDRO that defendant receive half of plaintiff's pension, the trial court ordered plaintiff to act as trustee for the benefit of defendant with respect to half of plaintiff's benefits and then deliver those funds to defendant. The ruling essentially ordered plaintiff to turn over half of his CRSC to defendant.

On plaintiff's motion for reconsideration, the trial court, in denying the motion, determined that it had not committed a palpable error. The court further ruled that *Mansell* was inapplicable because in that case the disability benefits were already being received when the divorce judgment was entered and the instant action entailed a *postjudgment* election of disability benefits and waiver of retirement pay.

### III. ANALYSIS

#### A. STANDARD OF REVIEW

We review de novo questions of law, *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998), including issues of statutory construction, *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006), and we find that interpretation of the divorce judgment and the QDRO is also a question of law, thereby necessitating review de novo.

#### B. UNITED STATES CODE

There are a number of pertinent federal statutes that we shall initially review before engaging in a discussion of the issues presented.

Members of the Navy who serve for a specified period, generally at least 20 years, are entitled to retire

and to receive retirement pay. 10 USC 6321 *et seq.*
Military veterans in general are entitled to compensa-
tion for service-connected disabilities under 38 USC
1101 *et seq.*, which we have referred to in this opinion as
"VA disability benefits." Further, CRSC is available to
an "eligible combat-related disabled uniformed services
retiree who elects [such] benefits . . . ." 10 USC
1413a(a). CRSC is "not retired pay." 10 USC 1413a(g).
To be eligible for CRSC, a person must be a member of
the uniformed services who is entitled to retired pay
and who has a combat-related disability. 10 USC
1413a(c). A combat-related disability is defined as fol-
lows:

> In this section, the term "combat-related disability"
> means a disability that is compensable under the laws
> administered by the Secretary of Veterans Affairs and
> that—
>
> (1) is attributable to an injury for which the member
> was awarded the Purple Heart; or
>
> (2) was incurred (as determined under criteria pre-
> scribed by the Secretary of Defense)—
>
> (A) as a direct result of armed conflict;
>
> (B) while engaged in hazardous service;
>
> (C) in the performance of duty under conditions simu-
> lating war; or
>
> (D) through an instrumentality of war. [10 USC
> 1413a(e).]

Plaintiff qualified for the three different forms of ben-
efits already discussed—disposable retirement pay, VA
disability benefits, and CRSC.

Pursuant to 10 USC 1414(a)(1), and effective Janu-
ary 1, 2004, "a member or former member of the
uniformed services who is entitled for any month to
retired pay and who is also entitled for that month to

veterans' disability compensation for a qualifying service-connected disability . . . is entitled to be paid both for that month . . . ." This concurrent receipt of military retirement pay and VA disability benefits is commonly referred to as CRDP, which stands for "concurrent retirement and disability pay." See *Jackson v Jackson*, 319 SW3d 76, 77 (Tex App, 2010). Because plaintiff was eligible for retirement pay and VA disability benefits, CRDP was an available option for plaintiff. A person who is qualified for CRDP and who is also qualified for CRSC, such as plaintiff, may elect to receive CRDP or CRSC, "but not both." 10 USC 1414(d)(1); see also 10 USC 1413a(f) (indicating that CRSC and CRDP must be coordinated under 10 USC 1414[d]). During an annual open-enrollment period, a person has the "right to make an election to change" from CRDP to CRSC or "the reverse, as the case may be." 10 USC 1414(d)(2). Plaintiff elected CRSC, which effectively discontinued his retirement pay that had been subject to the QDRO, halting payments to defendant.

The Uniformed Services Former Spouses' Protection Act (USFSPA), 10 USC 1408, generally governs the distribution of a spouse's military retirement pay to a former spouse pursuant to a court order, including state court final decrees of divorce issued in accordance with the state's laws and providing for the division of property expressed as a percentage of disposable retirement pay. 10 USC 1408(a)(1)(A) and (2). Section 1408(c)(1) provides, in pertinent part:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. [10 USC 1408(c)(1).]

Accordingly, disposable retired or retirement pay[2] can be treated by a court as joint property and thus subject to division in a state court divorce decree. As used in the USFSPA, the term "disposable retired pay" is defined, in relevant part, as "the total monthly retired pay to which a member is entitled less amounts which . . . are deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38[.]" 10 USC 1408(a)(4)(B). We note that, while VA disability benefits are provided for in title 38, the right to CRSC is found in title 10, not title 5 or title 38. As we will explain in our analysis of *Mansell*, which involved a waiver of retirement pay in favor of title 38 VA disability benefits,[3] the fact that CRSC is a title 10 benefit is of some significance. Finally, the total amount of the disposable retirement pay of a military spouse that a court orders payable to the other spouse "may not exceed 50 percent of such disposable retire[ment] pay." 10 USC 1408(e)(1).

With these provisions in mind, we now proceed to our discussion of the issues presented on appeal.

### C. DISCUSSION

We begin by first holding that, contrary to plaintiff's contention, his unilateral decision to elect CRSC was contrary to the terms and intent of the QDRO and

---

[2] We shall interchangeably use the terms "disposable *retirement* pay" and "disposable *retired* pay" for purposes of this opinion.

[3] As indicated earlier, 10 USC 1414(a)(1), post-*Mansell*, now permits a member or former member to receive his or her full retirement pay and VA disability benefits without reduction in the retirement pay when VA disability benefits are chosen. See *Mansell*, 490 US at 583 n 1 ("[I]f a military retiree is eligible for $1500 a month in retirement pay and $500 a month in disability benefits, he must waive $500 of retirement pay before he can receive any disability benefits.").

therefore the divorce judgment, given that the judgment incorporated by reference the QDRO. The clear language in the judgment and the QDRO required a 50 percent division of plaintiff's disposable retirement pay, and plaintiff was barred from making any "other benefit election . . . that would otherwise reduce the monthly pension allotment without the written consent of [defendant]." Plaintiff elected a benefit other than retirement pay when he elected CRSC to the exclusion of retirement pay, the election reduced and indeed eliminated defendant's monthly share of plaintiff's retirement pay, and there is no claim that defendant gave consent of any kind for plaintiff to make the CRSC election. The parties had also agreed that their mutual intent was to provide defendant with 50 percent of plaintiff's retirement pay. The decision to elect CRSC and to waive in its entirety the retirement pay was inconsistent with the declared mutual intent. The question now becomes one of remedy.

We find that the issue properly framed is whether a military spouse remains financially responsible to compensate his or her former spouse in an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of a divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment.

In *Mansell*, a United States Supreme Court case, the husband, who had been in the military, was receiving retirement pay along with, pursuant to a waiver of a portion of the retirement pay, VA disability benefits. He was receiving both benefits at the time of the divorce. Pursuant to a property settlement that was incorporated into the divorce decree, the husband agreed to pay

the wife 50 percent of his total military retirement pay, *including that portion of retirement pay that he had waived in order to receive disability benefits*. The husband then requested the trial court to modify the divorce decree by removing the provision requiring him to share his total retirement pay with his wife; he did not want to pay her a sum equal to half of the waived retirement pay. The trial court denied the request. The case made its way through the California appellate courts, with the husband arguing that the USFSPA and the statute protecting his disability benefits precluded the trial court from treating as community property that portion of his retirement pay that had been waived in favor of disability benefits. *Mansell*, 490 US at 585-587.[4]

The *Mansell* Court stated that it was being called upon to decide whether state courts, consistently with the USFSPA, "may treat as property divisible upon divorce military retirement pay waived by the retiree in order to receive veterans' disability benefits." *Id.* at 583. The Court held that state courts lacked the authority to make such a division, thereby ruling in favor of the husband. *Id.* The Court concluded that Congress had specifically enacted the USFSPA to change preexisting federal law that had completely preempted the application of state law to military retirement pay. *Id.* at 587-588. The *Mansell* Court noted that the USFSPA granted state courts the authority to divide military retirement pay as property, but the section of the USFSPA defining the term "disposable retired pay" specifically and clearly excluded military retirement

---

[4] Although addressing a case from a community-property state, the Court noted that its decision was equally applicable to equitable-distribution states, which would include Michigan. *Mansell*, 490 US at 584 n 2.

pay that had been waived in order to receive VA disability payments, which is a benefit found in title 38. *Id.* at 588-589. The USFSPA's definitional section relied on and quoted by the Court was 10 USC 1408(a)(4)(B), which, as indicated earlier, excludes from consideration as disposable retired pay amounts waived pursuant to law "in order to receive compensation under title 5 or title 38[.]" *Mansell,* 490 US at 589 n 9. Once again, CRSC is compensation received under title 10, and plaintiff here did not waive his right to retirement pay in order to receive compensation under title 5 or title 38, but to receive title 10 compensation.

The *Mansell* Court ruled that, although the USFSPA now granted authority to state courts to divide as property a military spouse's disposable retirement pay in general, states continued to be federally preempted from dividing as property disposable retirement pay that had been waived in order to receive VA disability benefits. *Id.* at 590-592. The Court ultimately held:

> Thus, the legislative history, read as a whole, indicates that Congress intended both to create new benefits for former spouses and to place limits on state courts designed to protect military retirees. Our task is to interpret the statute as best we can, not to second-guess the wisdom of the congressional policy choice. . . . Given Congress' mixed purposes, the legislative history does not clearly support Mrs. Mansell's view that giving effect to the plain and precise language of the statute would thwart the obvious purposes of the Act.
>
> We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

For the reasons stated above, we hold that the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits. [*Id.* at 594-595.]

We glean from *Mansell* some important, but subtle, points. First, *Mansell* did not entail an attempted division or distribution of the husband's VA disability benefits; rather, it concerned payments to the wife in an amount equal to half of the husband's total retirement pay, even though a portion of that pay was no longer being received by the husband, considering that he had waived receipt of that portion in favor of VA disability benefits. The trial court here effectively divided plaintiff's CRSC and, although *Mansell* did not directly address division of disability pay, the USFSPA clearly does not allow such a division. Subsection (c)(1) of the USFSPA, 10 USC 1408(c)(1), permits a court to treat only "disposable retired pay" as "property of the member and his spouse," and CRSC is "not retired pay," 10 USC 1413a(g). Accordingly, the trial court erred by dividing plaintiff's CRSC and forcing plaintiff to pay a portion of his CRSC to defendant. However, on the subject addressed in *Mansell*, i.e., dividing waived retirement pay, the *Mansell* decision actually supports making plaintiff in the case at bar pay defendant half of the retirement pay that he would be receiving but for his election to take CRSC.[5] The *Mansell* Court concluded that waived retirement pay could not be divided

---

[5] We recognize that it sounds a bit odd to speak of making a party pay half of monies not actually being received; however, conceptually it is analogous to imputing income to a party in the context of a child- or spousal-support matter and then ordering that party to make a payment based on income not actually being received. See *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000) (stating that when a party voluntarily reduces his or her income, a court may impute income to that party in order to arrive at an appropriate spousal-support award).

as property in circumstances in which the pay had been waived in favor of title 38 VA disability benefits, given that the definition of "disposable retired pay" in 10 USC 1408(a)(4)(B) excludes consideration of amounts waived in order to receive title 5 or title 38 compensation. Under the reasoning and rationale of *Mansell*, there would be no prohibition here against considering for division waived retirement pay under the USFSPA because we are addressing a waiver of title 10 CRSC not mentioned in 10 USC 1408(a)(4)(B). Thus, all of plaintiff's envisioned yet waived military-retirement pay can be divided without offending the USFSPA or *Mansell*. Accordingly, there is no bar to ordering plaintiff to compensate defendant in an amount equal to 50 percent of plaintiff's envisioned retirement pay as intended under the terms of the divorce judgment after plaintiff made a unilateral and voluntary postjudgment election to waive his retirement pay in favor of disability benefits contrary to the terms of the judgment.

Moreover, even aside from the title 10–title 38 distinction, our holding is consistent with appellate-court rulings from many other states on the issue. In reviewing these cases, we shall not provide too much in the way of details regarding the underlying facts because, for the most part, they are essentially the same as those that transpired here, i.e., postjudgment waivers of retirement pay in exchange for disability benefits that leave the nonmilitary, former spouse with reduced or no funds despite a divorce decree or settlement calling for the division of the military spouse's retirement pay. We do note that most of these cases involved VA disability benefits and not CRSC, which makes the case for a division of retirement pay waived in favor of CRSC even more compelling considering that *Mansell* and the USFSPA could be viewed as being somewhat problematic with respect to retirement pay waived in favor of

title 38 VA disability benefits. Also, a number of these cases did not involve judgment language, as is present here, requiring approval from the former spouse before the military spouse could make a different election, and plaintiff here consented to the preapproval condition, yet did not honor it. Indeed, a consent judgment is in the nature of a contract. *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008).

In *Bandini v Bandini*, 935 NE2d 253, 263 (Ind App, 2010), the Indiana Court of Appeals stated in a CRSC case that *Mansell* and the USFSPA do "not preclude state courts from requiring a military spouse to compensate a former spouse when the latter's share of retirement pay is reduced by the military spouse's unilateral post-dissolution waiver of retirement pay in favor of disability benefits." The court held "that a military spouse may not, by a post-decree waiver of retirement pay in favor of disability benefits or CRSC, unilaterally and voluntarily reduce the benefits awarded the former spouse in a dissolution decree." *Id.* at 264. The Indiana Court of Appeals concluded that the trial court had properly ordered the military spouse (husband) to compensate his former wife for the reduction in her share of retirement pay that was caused by the husband's CRSC election. *Id.* Consistently with our ruling, the Indiana court warned, "Because Husband is free to compensate Wife from any of his available assets, the trial court's order on remand need not and *should not* specify his CRSC benefit as the source of this compensation." *Id.* at n 10 (emphasis added). One of the reasons the court gave for distinguishing *Mansell* was that *Mansell* was addressing a predissolution waiver of retirement pay and the Supreme Court did not "imply that a post-dissolution waiver need be treated the same way." *Id.* at 263.

In *Resare v Resare*, 908 A2d 1006 (RI, 2006), the family court, after first emphasizing that it was not ordering the division of any disability benefits, ordered the military spouse to pay a sum equal to 35 percent of the gross pension that would have been in effect had the military spouse not unilaterally modified the stipulated property division with a pension waiver. The Rhode Island Supreme Court, affirming the family court's ruling, held that the lower court had properly predicated its order on breach-of-contract principles. *Id.* at 1010.

In *Hadrych v Hadrych*, 2007 NMCA 1, ¶ 13; 140 NM 829, 833; 149 P3d 593 (NM App, 2006), the New Mexico Court of Appeals, indicating that it was adopting the majority view, held that the lower court had properly ordered the military spouse to compensate his former spouse for the reduction in retirement benefits that occurred when the military spouse converted them to disability benefits. The lower court's ruling had not identified the disability benefits as being the source for the ordered compensation, leaving it to the military spouse to determine how to pay the compensation and utilize whatever assets he chose to satisfy the obligation. *Id.* The court of appeals stated that it was critical that "the court order [did] not specifically require that disability benefits provide the source of the funds paid to the non-military spouse." *Id.* at ¶ 14; 140 NM at 833 (citation and quotation marks omitted).

In *In re Marriage of Warkocz*, 141 P3d 926, 928 (Colo App, 2006), the Colorado Court of Appeals agreed with the nonmilitary spouse "that the trial court erred in failing to award her the amount she would have received from husband's military pay had he not applied for, and received, disability benefits." The court held that, consistent with public policy and decisions in

other jurisdictions, a trial court is not precluded from equitably enforcing a separation agreement. *Id.* at 930. The court stated that neither the USFSPA nor United States Supreme Court precedent requires "courts to completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect disability pay." *Id.* (citation and quotation marks omitted).

In *Black v Black*, 2004 ME 21, ¶ 10; 842 A2d 1280, 1285 (Me, 2004), the Maine Supreme Judicial Court held that *Mansell* and the USFSPA do not limit the authority of state courts "to grant postjudgment relief when military retirement pay previously divided by a divorce judgment is converted to disability pay, so long as the relief awarded does not itself attempt to divide disability pay as marital property."

In *Shelton v Shelton*, 119 Nev 492, 496-498; 78 P3d 507 (2003), the Nevada Supreme Court held that a military spouse was contractually obligated under a divorce settlement agreement to continue paying his former wife $577 a month, even though the agreement indicated that the payment represented half of the military retirement pension and the military spouse had waived that pension in order to receive disability benefits.

We agree with the following sentiments expressed by the New Jersey Superior Court, Appellate Division, in *Whitfield v Whitfield*, 373 NJ Super 573, 582-583; 862 A2d 1187 (2004):

> It is important to emphasize the procedural posture of this case. The issue is one of enforcement of a prior equitable distribution award, not a present division of assets. Wife does not seek to divide her former husband's disability benefits in violation of *Mansell*. Nor does she seek a greater percentage of her husband's military pen-

sion than she originally received at the time of his retirement pursuant to court order. Moreover, wife does not seek to alter the terms of her veteran-spouse's retirement plan or to compel the Department of Defense to make direct payments to her in excess of those permitted by federal law. The remedy she seeks, and that to which she is entitled, is an enforcement of the original order which was in effect before her former husband retired and unilaterally elected the waiver. [The trial court] appropriately accomplished that result by requiring husband to make up the shortfall in his former wife's equitable distribution award occasioned by his actions.

The trial court's determination does not hinder husband's receipt of veterans' disability benefits. Nor does it impinge upon federal statutory rights husband has under the USFSPA or violate the doctrine of pre-emption. Rather, the determination is whether under our state law the trial court has the authority to interpret and enforce a judicial decree entered prior to the retiree's unilateral election of a method of payment that has tax advantages to him and adverse consequences to his former wife. We conclude that our court does have that authority. This was an appropriate remedy to avoid the inequities that would be imposed on a spouse who had no control over, but suffered the consequences of, the other's unilateral election to switch retirement benefits to tax-free disability benefits.

In *In re Marriage of Krempin*, 70 Cal App 4th 1008, 1015; 83 Cal Rptr 2d 134 (1999), the California Court of Appeal noted that out-of-state precedents had reached "nearly universal" consensus that equitable action to compensate the nonmilitary spouse is appropriate, on one theory or another, when that spouse's share of retirement pay is reduced by the military spouse's postjudgment waiver of retirement pay.

In *Danielson v Evans*, 201 Ariz 401, 407-409; 36 P3d 749 (Ariz App, 2001), the Arizona Court of Appeals upheld an order that required the military spouse to pay his former wife the difference between the value of

the retirement pay as it was envisioned at the time of the divorce and the reduced amount that she actually received after a waiver.

In *Krapf v Krapf*, 439 Mass 97, 105-108; 786 NE2d 318 (2003), the Massachusetts Supreme Judicial Court held, under theories of breach of a duty of good faith and fair dealing, that it was proper to order the military spouse to pay his former wife an amount equal to the military retirement pay she would have received under a settlement agreement had the husband not waived the pay in favor of disability benefits. The court stated that there was no violation of *Mansell* or the USFSPA when the order at issue "merely enforced the defendant's contractual obligation to his former wife, which he may satisfy from any of his resources." *Id.* at 108.

In *In re Marriage of Nielsen*, 341 Ill App 3d 863, 869-870; 792 NE2d 844 (2003), the Illinois Appellate Court ruled:

> [W]e believe that a party's vested interest in a military pension cannot be unilaterally diminished by an act of a military spouse, and we apply this principle to the present case. Here, the parties agreed that Susan would receive "25% of the gross retired or retainer pay due Mark." It is clear that the parties intended that Susan would receive a percentage of Mark's total retirement pay and not just his disposable retired or retainer pay. The parties' intent was incorporated into the judgment for dissolution. Mark retired and the judgment for dissolution was implemented. However, Mark thereafter decided to accept an increased amount of disability benefits. This resulted in a reduction of Mark's disposable retired or retainer pay. This accordingly reduced Susan's entitlement. Mark certainly had a legal right to receive disability benefits, but his doing so caused a diminution in the amount of his retirement pay that Susan had been receiving for over three years. Mark's decision frustrated the parties' intent and the trial court's judgment for dissolution. Indeed, to allow Mark to unilat-

erally diminish Susan's interest in his military pension would constitute an impermissible modification of a division of marital property. As such, we affirm the trial court's order of November 3, 2000, in which it ruled that Susan was entitled to an amount equal to 25% of Mark's military pension as it existed on the date he retired. Because the trial court's November 3, 2000, order does not directly assign Mark's military disability pay, it does not offend the United States Supreme Court's ruling in *Mansell*.

In *Johnson v Johnson*, 37 SW3d 892, 897-898 (Tenn, 2001), the Tennessee Supreme Court held that a marital dissolution agreement that divides military retirement benefits gives the nonmilitary spouse a vested interest in his or her portion of the benefits, which cannot thereafter be unilaterally diminished by an act of the military spouse, given that such an act would constitute an impermissible modification and violation of the agreement. The court remanded the case for entry of an order providing the nonmilitary spouse with a monthly payment equal to her share of the waived retirement pay without dividing the military spouse's disability pay. *Id.* at 898.

Next, we wish to touch on two recent Texas cases addressing CRSC and waivers of retirement pay. In *Sharp v Sharp*, 314 SW3d 22 (Tex App, 2009), the Texas Court of Appeals addressed a waiver of retirement pay in exchange for CRSC, and it rejected the nonmilitary spouse's motion to enforce and clarify the divorce judgment. However, it appears that the argument posed by the nonmilitary spouse was simply that CRSC constituted military retirement pay for purposes of the judgment. And the appellate court merely held that CRSC is not retirement pay and thus the judgment did not divide CRSC that might have become payable at a later date. *Id.* at 25. The nonmilitary spouse was essentially seeking a portion of the CRSC. We agree, as

already noted, that CRSC is not retirement pay and is not subject to division; however, our analysis is couched in terms of dividing waived retirement pay and ordering replacement compensation, which matters the *Sharp* panel did not address. Indeed, *Mansell* and the litany of cases distinguishing *Mansell* are not even mentioned in *Sharp*.

In *Jackson*, 319 SW3d 76, the Texas Court of Appeals addressed a situation in which the military spouse (husband) had been appointed as trustee in a divorce judgment with respect to his ex-wife's interest in his disposable retirement pay, and he later became eligible for VA disability benefits and then CRSC, which he elected to receive. As in *Sharp*, the *Jackson* panel found that only retirement pay was subject to division, and it further ruled that the military spouse had no fiduciary obligation in regard to the CRSC. *Id.* at 81. The *Jackson* case, like the *Sharp* case, examined the issue from the perspective of dividing and awarding the CRSC funds and not the approach that we and numerous other jurisdictions have chosen. And again, we agree that CRSC is not subject to division.

While there are a few cases ruling differently, see, e.g., *In re Marriage of Pierce*, 26 Kan App 2d 236, 240; 982 P2d 995 (1999) (finding no relief available for ex-wife after former husband waived his military retirement pay in favor of disability benefits), the overwhelming weight of the caselaw from other jurisdictions supports our resolution of this appeal. By this opinion, Michigan now joins those jurisdictions providing relief to the nonmilitary spouse.

IV. CONCLUSION

We hold that a military spouse remains financially responsible to compensate his or her former spouse in

an amount equal to the share of retirement pay ordered to be distributed to the former spouse as part of a divorce judgment's property division when the military spouse makes a unilateral and voluntary postjudgment election to waive the retirement pay in favor of disability benefits contrary to the terms of the divorce judgment. Conceptually, and consistently with extensive caselaw from other jurisdictions, we are dividing waived retirement pay in order to honor the terms and intent of the divorce judgment. Importantly, we are not ruling that a state court has the authority to divide a military spouse's CRSC, nor that the military spouse can be ordered by a court to pay the former spouse using CRSC funds. Rather, the compensation to be paid the former spouse as his or her share of the property division in lieu of the waived retirement pay can come from any source the military spouse chooses, but it must be paid to avoid contempt of court. To be clear, nothing in this opinion should be construed as precluding a military spouse from using CRSC funds to satisfy the spouse's obligation if desired. In these situations, because the ordered replacement compensation must relate to the military spouse's retirement-pay obligation and not the disability pay now being received, and because the military spouse, having made the election, will no longer actually be receiving the retirement pay, it may be necessary on occasion to review and determine whether any adjustments to the retirement pay would have been made had the military spouse continued receiving the retirement pay.

Accordingly, although we agree with the trial court that plaintiff must compensate defendant, we reverse the trial court's ruling because its order required plaintiff to pay defendant from CRSC funds and required plaintiff to pay an amount equal to half of his CRSC and not half of his envisioned retirement pay. We remand for

entry of an order requiring plaintiff to compensate defendant with monthly payments, from any source or combination of sources chosen, in an amount equal to 50 percent of the retirement pay that he would be receiving but for his election to waive the retirement pay in favor of disability benefits.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.