# STATE OF MICHIGAN

# COURT OF APPEALS

EMMETT RICHARDSON, JR.,

        Plaintiff-Appellant,

v

PAMELA DENISE PEARSON,

        Defendant-Appellee.

UNPUBLISHED
June 21, 2016

No. 326251
Genesee Circuit Court
Family Division
LC No. 14-310618-DO

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Plaintiff, Emmett Richardson, Jr., appeals as of right the division of property under the judgment of divorce that dissolved his marriage to defendant, Pamela Denise Pearson. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff and defendant were married in 2006. The marriage produced no children, although both parties had minor and adult children from prior relationships.

In January 2014, plaintiff filed a complaint for divorce, alleging that there had been an irreparable breakdown of the marriage. After numerous hearings and adjournments, a trial was held in November 2014. The testimony largely focused on the parties' income, financial resources, real estate holdings, and vehicles, as plaintiff and defendant strongly disputed each other's financial standing and financial contributions to the household. Additionally, even though plaintiff initiated the divorce, defendant testified that the marriage had been plagued by plaintiff's infidelity and contended that he had been involved in extramarital relationships with approximately seven different women during the marriage.

Ultimately, under the judgment of divorce, both parties retained all personal property and household items in their possession. Plaintiff received the parties' marital home, which was

encumbered by a significant mortgage; two rental properties,[1] which were subject to substantial tax debts; a silver Toyota Prius; two other vehicles owned by plaintiff before the marriage; a motorcycle; $5,000 in proceeds from Ford stock;[2] $3,000 from a savings account in his name; and 50% of the parties' retirement and pension benefits, including his military pension, that accrued during the marriage.[3] He also was named responsible for a $1,500 debt to ABC Warehouse; 50% of approximately $28,000 that defendant received in student loans, which had been used for household expenses; and 50% of other marital debts. Defendant received a Lincoln Navigator; a blue Toyota Prius; and the other 50% of the parties' retirement and pension benefits, including plaintiff's military pension, that accrued during the marriage. She also remained responsible for the debt from multiple store credit cards and cell phone bills; the other 50% of approximately $28,000 in student loan funds that had been used for household expenses; approximately $112,000 in student loans for her education; and 50% of additional marital debts. The trial court did not order any spousal support.

After the judgment was entered, plaintiff filed a motion for new trial and remitter. The court held a hearing on the motion, further explained its division of the parties' property, and then denied plaintiff's motion.[4]

## II. DIVISION OF PROPERTY

Plaintiff argues that the trial court's division of the marital estate was inequitable because defendant received the blue Toyota Prius and a share of plaintiff's retirement and pension benefits, while plaintiff was encumbered with the entire amount of his student loan debt, a debt from the purchase of a television from ABC Warehouse, and two real estate properties with significant tax burdens. We disagree.

## A. STANDARD OF REVIEW

Following the entry of a divorce judgment, "[t]he trial court's factual findings will not be reversed unless they are clearly erroneous, i.e., if this Court is left with the definite and firm

---

[1] One was located on Caldwell Street in Detroit, Michigan, while the other was located on Marengo Street in Flint, Michigan. The Caldwell Street house was purchased during the marriage. The Marengo Street house was purchased by plaintiff before the marriage, but was paid off and maintained with marital funds during the marriage.

[2] However, based on plaintiff's testimony at trial, the proceeds from the stock already had been spent on household expenses.

[3] The court held that funds withdrawn from one of defendant's retirement accounts during the marriage were not counted against her share since those funds were used for household purposes.

[4] Although the trial court agreed to give the parties more time to address arguments related to the division of plaintiff's military pension, there is no indication in the lower court record that the trial court subsequently amended the division of plaintiff's military benefits under the divorce judgment.

conviction that a mistake has been made." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts." *Id.* "The trial court's dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Id.*

## B.  APPLICABLE LAW

"In any divorce action, a trial court must divide marital property between the parties and, in doing so, it must first determine what property is marital and what property is separate." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Id.* at 201. Generally speaking, "marital assets are subject to division between the parties[,] but the parties' separate assets may not be invaded." *Woodington v Shokoohi*, 288 Mich App 352, 364; 792 NW2d 63 (2010). Marital debts are treated in the same way as marital assets in a divorce action. See, e.g., *Butler v Simmons-Butler*, 308 Mich App 195, 208-209; 863 NW2d 677 (2014). "To reach an equitable division of marital property, a trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance." *Woodington*, 288 Mich App at 363. "The determination of relevant factors will vary with the circumstances of each case, and no one factor should be given undue weight." *Id.* Additionally, "[w]hen dividing marital property, a court is not required to award mathematically precise shares." *Id.* at 365.

"The trial court has the best opportunity to view the demeanor of the witnesses and weigh their credibility." *Stoudemire v Stoudemire*, 248 Mich App 325, 339; 639 NW2d 274 (2001). Thus, "[t]his Court gives special deference to a trial court's findings when they are based on the credibility of the witnesses." *Draggoo v Draggoo*, 223 Mich App 415, 429; 566 NW2d 642 (1997).

## C.  APPLICATION

We reject plaintiff's claims that the trial court's division of property was inequitable.

### 1.  CONSIDERATION OF RELEVANT FACTORS

As an initial matter, contrary to plaintiff's claim on appeal, it is apparent from the trial court's factual findings that it did not give undue weight to plaintiff's fault in the breakdown of the marriage when it divided the property. See *Woodington*, 288 Mich App at 363. Although it noted that it credited defendant's testimony that plaintiff's "affairs and extramarital activities" were the reason for the breakdown in the marriage, the court specifically stated that this was "a relatively small consideration." The trial court's reasoning shows that it also considered the "fairly short term" duration of the marriage; the fact that the parties have children from other relationships and related child support obligations; and each party's occupation and earning capacity, including the fact that plaintiff "ha[s] an increased level of earnings" and that defendant was expected to receive a raise the following year. See *id.* Additionally, in dividing the

property, the trial court made the following factual findings, among others: (1) despite plaintiff's claims that defendant had frivolous spending habits, defendant's spending was proportionate to half of the household's income; (2) plaintiff "had a wildly unfair perception of what was his versus what was [defendant's] and what she should be responsible for and what he should be responsible for"; (3) plaintiff "made substantially more than [defendant] made[,] but demanded that she pay a disproportionate share [of] her income [to] the household debts"; and (4) the personal property in each party's possession was proportionate, despite plaintiff's allegation that defendant only left him a spoon. Accordingly, on this record, we find no support for plaintiff's suggestion that the trial court placed undue emphasis on his past conduct or fault when it divided the property.

## 2. TOYOTA PRIUS

Plaintiff claims that the trial court should have awarded him the blue Toyota Prius because he had contributed approximately $4,000 in repairs for that vehicle. We disagree.

The trial court specifically considered plaintiff's greater income and, to a lesser extent, plaintiff's fault in the divorce. Notably, at the time of the divorce, plaintiff's salary was $79,373 and defendant's salary was $46,714, even though her earnings were expected to increase significantly the following year due to a promotion. Given the parties' significant disparity in income, the trial court's factual finding concerning plaintiff's fault in this matter, which was not clearly erroneous, and the overall distribution of marital assets in this case, we are not convinced that the trial court's award of the blue Prius to defendant was inequitable. *Reed*, 265 Mich App at 150.

## 3. ABC WAREHOUSE DEBT

Plaintiff next argues that the trial court should not have ordered him to assume the ABC Warehouse debt, which arose from defendant's purchase of a television. We disagree.

Although marital debts are usually treated in the same way as marital assets, see, e.g., *Butler*, 308 Mich App at 208-209, a court may require one party to pay a debt incurred during the course of the marriage if it determines that the debt, or a majority of it, was incurred exclusively by that party. *Lesko v Lesko,* 184 Mich App 395, 401; 457 NW2d 695 (1990), overruled on other grounds *Booth v Booth,* 194 Mich App 284, 291; 486 NW2d 116 (1992). Here, the parties provided contradictory testimony regarding whether the debt arose from defendant's purchase of a television on plaintiff's ABC Warehouse account for herself after the parties' separation, whether it was purchased for plaintiff's mother, or whether it was purchased for the marital home. As such, despite plaintiff's claims, it is not apparent that the debt was incurred solely by defendant.

Additionally, we are not left with a firm conviction that the trial court's award of the debt to plaintiff was inequitable. The trial court acknowledged plaintiff's greater financial resources and specifically found that, during the marriage, plaintiff "made substantially more than [defendant] made[,] but demanded that she pay a disproportionate share [of] her income [to] the household debts[.]" Thus, it is apparent that the trial court believed, in light of this finding, that it was equitable for plaintiff to incur a greater share of the financial burden upon divorce. Such a

conclusion was not clearly erroneous on this record. See *id.* Furthermore, it is apparent that the trial court awarded this $1,500 debt to plaintiff in conjunction with awarding $1,700 in credit card debts from other stores to defendant. In response to plaintiff's motion for a new trial, the trial court also noted that both parties made purchases on the ABC Warehouse account and that the court specifically intended to offset the ABC Warehouse debt awarded to plaintiff by awarding other credit card debts to defendant. Given the relatively equal value of this division of similar consumer debts, along with plaintiff's ability to pay and his fault in instigating the divorce, we reject plaintiff's claim that the award of this debt was inequitable.

## 4. $9,000 STUDENT LOAN DEBT

Third, plaintiff claims that the trial court improperly divided a portion of defendant's student loan debt between the parties while requiring plaintiff to pay his own $9,000 student loan debt.[5] We disagree.

In its factual findings, the trial court expressly stated that it credited defendant's testimony that the parties used $28,000 of her student loan money for family expenses, and it noted that her testimony was supported by account documentation. Likewise, at the hearing on plaintiff's motion for a new trial and remittitur, the trial court reiterated its finding that defendant verified the portions of her student loans that went to household expenses, while plaintiff failed to substantiate his claim that his $9,000 student loan was used for household expenses. Although plaintiff testified under oath that the $9,000 amount was used for marital expanses, the trial court repeatedly determined that plaintiff lacked credibility. Again, we "give[] special deference to a trial court's findings when they are based on the credibility of the witnesses." *Draggoo*, 223 Mich App at 429. Therefore, given (1) the trial court's specific finding that plaintiff did not use the $9,000 for family expenses, (2) its findings regarding plaintiff's income and contributions to the household throughout the marriage, and (3) the value of the assets awarded to defendant under the judgment of divorce, we are not convinced that the trial court inequitably divided the parties' student loan debt. See *Butler*, 308 Mich App at 208-209; *Lesko*, 184 Mich App at 401.

## 5. REAL ESTATE HOLDINGS

Fourth, plaintiff claims that he should not have been awarded both the Caldwell Street and Marengo Street properties, as this award resulted in liability for "more than $11,000 in debt." We disagree.

In dividing the real estate owned by the parties, the trial court specifically considered the market value and tax debt owed on each of the properties, and it rejected plaintiff's claim that the Marengo Street property was worth only $5,000 given the exhibits that plaintiff submitted to the court. The court found that the Marengo Street house was worth $15,000, but burdened by a $5,000 tax debt; that the Caldwell Street house was worth $5,000, but encumbered by a $10,000

---

[5] Plaintiff also asserts in passing that the trial court did not address this debt until after he moved for a new trial. However, the trial court expressly addressed this debt on page 3 of the judgment of divorce, which was entered weeks before plaintiff filed his motion for a new trial.

tax burden; and that both properties were rental properties. In considering the value and debt owed on the Marengo Street and Caldwell Street properties in conjunction with the market value of the properties, and the fact that plaintiff was easily able to transfer those properties to another party, the trial court concluded that the award of these properties to plaintiff ultimately amounted to a "wash," which we understand as a finding that the award did not amount to a reduction in the overall value of the marital property awarded to plaintiff. The court indicated that it was equitable for plaintiff to incur more debt given the rental income available from the properties. Therefore, on this record, we are not left with a firm conviction that the trial court's award of both properties to plaintiff was inequitable. *Reed*, 265 Mich at 150.

## 6. PENSION

Lastly, plaintiff contends that the trial court's division of pension benefits was inequitable because "[b]oth parties are educated, employed, and entitled to their own retirement benefits," and "[n]either party is dependent on receiving pension benefits of the other party." He also appears to suggest, in citing MCL 552.23(1) and *Pickering v Pickering*, 268 Mich App 1; 706 NW2d 835 (2005), that his retirement and pension benefits are separate property that was not subject to division by the court. However, pensions and retirement accounts are considered marital property subject to division upon divorce. MCL 552.18; *Pickering*, 268 Mich App at 7-8; *Magee v Magee*, 218 Mich App 158, 164-165; 553 NW2d 363 (1996). Given the trial court's findings regarding the parties' income disparity and plaintiff's contribution to household expenses during the marriage, as well as the trial court's finding of fault, we disagree that awarding a portion of plaintiff's pension to defendant was inequitable. Most notably, the trial court awarded both parties equal shares of all pension, profit sharing, and retirement plan benefits accumulated during the marriage by both parties, subject to one exception.

Plaintiff also argues that his military pension was not subject to division pursuant to 10 USC 1408(d)(2) because the parties were married for less than 10 years. 10 USC 1408(d) provides, in pertinent part:

(d) *Payments by Secretary concerned to (or for benefit of) spouse or former spouse.*—

(1) After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse or a former spouse of the member, *the Secretary shall make payments* (subject to the limitations of this section) *from the disposable retired pay of the member to the spouse or former spouse* . . . , with respect to a division of property, in the amount of disposable retired pay specifically provided for in the court order.

(2) If the spouse or former spouse to whom payments are to be made under this section was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired pay, *payments may not be made under this section* to the extent that they include an amount resulting from the

treatment by the court under subsection (c) of disposable retired pay of the member as property of the member or property of the member and his spouse. [Emphasis added.]

Thus, when read it context, it is clear that 10 USC 1408(d)(2) is merely a mechanism by which a military pension may be *directly* paid by the federal government to a former spouse. *Mansell v Mansell*, 490 US 581, 585; 109 S Ct 2023; 104 L Ed 2d 675 (1989). Additionally, plaintiff fails to recognize that 10 USC 1408(c)(1), provides, in relevant part:

> (c) Authority for court to treat retired pay as property of the member and spouse.—
>
> (1) Subject to the limitations of this section, a court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member *or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. . . .* [10 USC 140

As such, a state court is authorized to treat "disposable retired or retainer pay," meaning "the total monthly retired or retainer pay to which a military member is entitled, minus certain deductions," as marital property under 10 USC 1408(c)(1). *Mansell*, 490 US at 584-585; see also *Megee v Carmine*, 290 Mich App 551, 562; 802 NW2d 669 (2010) ("[D]isposable retired or retirement pay can be treated by a court as joint property and thus subject to division in a state court divorce decree.") (footnote omitted). Plaintiff makes no argument that his retirement or pension benefits are something other than "disposable retired or retainer pay."

Accordingly, we find no basis for concluding that the marriage duration requirement in 10 USC 1408(d)(2) precludes the division of military pension benefits in this case. Accord, e.g., *Michel v Michel*, 286 Ga 892, 894; 692 SE2d 381 (2010); *In re Marriage of Gurganus & Gurganus*, 34 Kan App 2d 713, 718-719; 124 P3d 92 (2005).

### III. CONCLUSION

The trial court's division of marital property in this case was equitable. On this record, we are not left with a firm conviction that the trial court's division of property was inequitable. See *Reed*, 265 Mich App at 150.

Affirmed.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan

-7-